PEOPLE v HAYES

Docket No. 67551. Argued October 4, 1984 (Calendar No. 1).—Decided
December 28, 1984. Released February 1, 1985.

Larry Hayes was convicted by a jury in the Allegan Circuit Court
of first-degree murder. On the basis of defendant's failure to
cooperate during psychiatric examinations, the court, George R.
Corsiglia, J., had granted the prosecutor's pretrial motion to
bar evidence relating to an insanity defense. The Court of
Appeals, D. F. Walsh, P.J., and R. B. Burns and D. E. Holbrook,
Jr., JJ., affirmed in an unpublished opinion per curiam (Docket
No. 47321). The defendant appeals.

In an opinion by Justice Cavanagh, joined by Chief Justice
Williams and Justices Ryan, Brickley, and Boyle, the Supreme
Court *held:*

The requirement that a defendant who raises an insanity
defense cooperate in a psychiatric examination relating to the
claim of insanity or be barred from presenting evidence of
insanity at trial does not unconstitutionally infringe on the
defendant's right to present a defense; nor is the sanction
unconstitutionally vague.

1. The right to present a defense, although a fundamental
element of due process, is not an absolute right. An accused
must still comply with established rules of procedure and
evidence, designed to assure both fairness and reliability in the
ascertainment of guilt or innocence. Nor is there a constitu-
tional right to assert an insanity defense. The Legislature has
created definitions of mental illness and insanity, and the
limitations of the circumstances within which they apply do
not necessarily raise questions of constitutional proportions. In
requiring a defendant to cooperate with psychiatric evaluations
on the issue of sanity, the Legislature intended to give trial
courts discretion to determine whether an insanity defense
should be barred on the basis of a defendant's failure to

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 21 Am Jur 2d, Criminal Law § 65 *et seq.*
Validity and construction of statutes providing for psychiatric
examination of accused to determine mental condition. 32 ALR2d
434.

cooperate. The purpose of the requirement is to protect the integrity of the evidence regarding an insanity defense and to provide the parties and the court with a fair and accurate evaluation of the defendant's competency to stand trial and criminal responsibility.

2. In Michigan, once a defendant presents evidence of insanity, the prosecution is required to prove the defendant's sanity beyond a reasonable doubt. The unique character of the defense requires evaluation of the defendant by a medical expert. Because full cooperation by the defendant is essential to the process, preclusion of testimony on the basis of a failure to cooperate is not too harsh a sanction. The overriding policy considerations provide a reasonable basis for the mandatory bar.

3. The statute is not unconstitutionally vague. It provides fair notice that voluntary non-cooperation by a defendant will bar an attempt to present evidence of insanity. That the insanity itself might result in non-cooperation is acknowledged and the defendant is protected by the requirement that an independent hearing on that matter be held prior to trial. Nor does the statute provide unstructured and unlimited discretion to the trial court to determine whether impermissible conduct occurred. Instead, the trial court is to make the determination on the basis of the examiner's written report and testimony and the court's observations. The statutory scheme is intended to not only protect and benefit the public, but also to benefit the defendant by providing for a full and fair determination of his criminal responsibility.

Affirmed.

Justice Levin, joined by Justice Kavanagh, dissenting, stated that the constitutional right of a defendant in a criminal case to present a defense may not be conditioned on the surrender of his constitutional right against self-incrimination.

A defendant has a fundamental right to remain silent and to present witnesses to establish a defense. Generally, it is a defense that a defendant is not criminally responsible for criminal activity because of insanity. The sanity of a defendant is presumed, and the right to present a defense includes the right to offer competent evidence to rebut the presumption. Under the act, a defendant is barred from presenting any testimony relating to insanity if he remains silent at the mandatory psychiatric examination. The bar is lifted, if the defendant cooperates fully. The threat of an absolute preclusion of the insanity defense may induce some defendants to speak with the forensic examiner. Those who refuse to do so will be

penalized for exercising their constitutional right to remain silent. The requirement that a defendant who raises an insanity defense voluntarily cooperate with a psychiatric examiner is unconstitutional to the extent that it precludes a defendant from offering any evidence probative of insanity unless he submits to a court-ordered psychiatric examination.

A defendant who gives notice of an insanity defense may be required to submit to a psychiatric examination so that if he calls an expert witness on the issue of his sanity, the people can offer responsive expert testimony without delaying the trial. If the consequence of failing to cooperate with a forensic examiner is limited to the preclusion of expert testimony offered by the defendant, the constitutional rights to present a defense and to remain silent are not necessarily infringed.

### OPINION OF THE COURT

1. CRIMINAL LAW — DEFENSES — INSANITY — PSYCHIATRIC EXAMINATIONS.

The requirement that a defendant who raises an insanity defense cooperate in a psychiatric examination relating to the claim of insanity or be barred from presenting evidence of insanity at trial does not infringe upon the defendant's right to present a defense; nor is the sanction unconstitutionally vague (US Const, Ams VI, XIV; Const 1963, art 1, §§ 13, 17, 20; MCL 768.20a[4]; MSA 28.1043[1][4]).

2. CRIMINAL LAW — DEFENSES — INSANITY.

The right to present a defense, although a fundamental element of due process, is not an absolute right; an accused must comply with established rules of procedure and evidence so as to assure fairness and reliability in the ascertainment of guilt or innocence; nor is there a constitutional right to assert a defense of insanity, and the requirement that a defendant who raises an insanity defense cooperate in psychiatric examinations relating to the defense or be barred from presenting evidence of insanity is not too harsh a sanction in light of overriding policy considerations of protecting the integrity of the evidence of insanity and providing the parties and the court with a fair and accurate evaluation of the defendant's competency to stand trial and criminal responsibility (MCL 768.20a[4]; MSA 28.1043[1][4]).

### DISSENTING OPINION BY LEVIN, J.

3. CRIMINAL LAW — DEFENSES — INSANITY — PSYCHIATRIC EXAMINATIONS.

*A defendant has a fundamental right to present witnesses to*

*establish a defense which may not be conditioned upon the surrender of the constitutional right against self-incrimination; thus, the requirement that a defendant who raises an insanity defense voluntarily cooperate with a psychiatric examiner or be barred from presenting evidence of insanity is unconstitutional to the extent that it precludes the defendant from offering any evidence probative of insanity unless he submits to a court-ordered psychiatric examination (US Const, Ams VI, XIV; Const 1963, art 1, §§ 13, 20; MCL 768.20a[4]; MSA 28.1043[1][4]).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Fred R. Hunter, III,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the plaintiff.

State Appellate Defender (by *Fred E. Bell,* Special Assistant Defender, and *Ronald J. Bretz,* Assistant Defender) for the defendant.

CAVANAGH, J.

I

Defendant Larry Hayes was convicted by a jury of first-degree murder, MCL 750.316; MSA 28.548, and sentenced to life imprisonment for the killing of his common-law wife, Bobbie Kelly. On the basis of his failure to cooperate during psychiatric examinations, the trial court granted the prosecutor's pretrial motion to bar evidence relating to an insanity defense.

At the time of trial, MCL 768.20a(4); MSA 28.1043(1)(4) stated:

"The defendant shall fully cooperate in his examination by personnel of the center for forensic psychiatry and by any other independent examiners for the defense and prosecution. If he fails to cooperate, and that failure is established to the satisfaction of the court at a hearing prior to trial, the defendant shall be barred

from presenting testimony relating to his insanity at the trial of the case."[1]

We granted leave[2] to determine the following issues: (1) whether application of the preclusion provision of MCL 768.20a(4); MSA 28.1043(1)(4) unconstitutionally infringed on defendant's right to present a defense, and (2) whether MCL 768.20a(4); MSA 28.1043(1)(4) is unconstitutionally vague. We answer no to both questions.

## II

On November 12, 1978, two state troopers were called to the defendant's trailer home. They were met outside by Bobbie Kelly's brother, who informed the troopers that his sister lay dead inside. Once inside, the troopers encountered the decedent's parents and the defendant. According to one of the troopers, defendant seemed relatively calm. However, defendant's speech was not always understandable, and he occasionally spoke to what he referred to as "spirits" who were "not in the room." When one of the troopers asked defendant what happened to Bobbie, defendant allegedly responded, "I did it, I think it was on Thursday." The policeman gave defendant his *Miranda* warnings, and arrested him. During the ride to the state police post, defendant instructed the troopers to tell the media that he killed Bobbie.

Prior to trial and upon stipulation, defendant was ordered committed to the Center for Forensic Psychiatry to determine whether he was competent to stand trial and the extent of his criminal responsibility due to the possibility of mental illness at the time of the alleged offense.

---

[1] As amended by 1983 PA 42, § 1. The amendment made certain minor changes which do not change the result reached here.

[2] 418 Mich 894 (1984).

Defendant met with Center staff psychologist Dr. Harley Stock on February 7, 1979. Dr. Stock testified at the initial pretrial competency hearing that the defendant failed to cooperate during the examination. For example, defendant refused to fill out the forensic history questionnaire, and refused to sign the informed consent notification form. However, defendant did sign a form releasing his past medical records after he was informed that they would be needed for his insanity defense. Defendant also signed a document informing the jail about his physical complaints. In response to Dr. Stock's initial questioning, defendant related his past psychiatric history. However, defendant "got sick" and "clammed up" when asked about his actions leading up to the alleged crime. Defendant was allowed to lie down in the emergency treatment room until he calmed down. The interview resumed, and defendant gave his account of his actions on the day Bobbie died. Dr. Stock concluded that defendant was only providing as much information as defendant thought was in his best interests.

Defendant exhibited similar behavior at a second examination held on February 22, 1979. According to Dr. Stock's testimony and his formal report, defendant completely refused to interact with Dr. Stock at that time. Defendant would not give any socio-cultural history, and refused to undergo psychological testing.

The prosecution later moved to bar any testimony regarding defendant's possible insanity on the basis of his failure to cooperate at the prior examinations. MCL 768.20a(4); MSA 28.1043(1)(4). The trial court ordered one final examination at the Center.

Dr. Stock received the aid of a second staff psychologist at defendant's third examination.

However, all efforts to initiate meaningful discussion proved fruitless. Dr. Stock concluded that defendant's behavior was wholly volitional, and that defendant was competent to stand trial. This conclusion was partly based on defendant's ability to differentiate between the legal forms that appeared to be in his best interests, and those that did not. However, Dr. Stock was initially unwilling to make a formal conclusion regarding defendant's criminal responsibility at the time of the offense, since he was unable to complete the clinical examination. When pressed for a conclusion, Dr. Stock recommended that the defendant be adjudicated criminally responsible for his actions.[3] However, at the final pretrial competency hearing held on May 29, 1979, Dr. Stock testified that he did not have all the information that he would like, and that his opinion might have been altered on the basis of further information.

The trial court found defendant competent to stand trial. It also granted the prosecution's motion, and barred defendant from offering evidence of insanity at trial.

Although defendant was not allowed to offer evidence of insanity, he testified at trial, and the trial court felt that the issue had been implicitly raised through the defendant's mannerisms and actions at trial. Accordingly, the jury was in-

[3] "Based on the information available to this clinician through clinical interviews and collateral data, this clinician does not feel there is enough clear and convincing evidence to offer an opinion that the defendant was either mentally ill or legally insane on the day of the alleged crime. That is, the defendant refused to cooperate enough in multiple clinical examinations so that this clinician would have an adequate base of information in order to form an opinion supporting exculpability. Therefore, based on the above, it is the opinion of this certified forensic examiner that the defendant, Larry Hayes, was neither mentally ill nor legally insane on the day of the alleged crime and it is recommended that he be adjudicated criminally responsible for his actions." Forensic Opinion on Criminal Responsibility, May 2, 1979.

structed on the distinction between legal sanity and mental illness. The jury was also instructed that they could return four possible verdicts: guilty, guilty but mentally ill,[4] not guilty by reason of insanity, and not guilty.

The jury returned a guilty verdict, and defendant was sentenced to life imprisonment. The Court of Appeals affirmed the conviction in an unpublished per curiam opinion. *People v Hayes,* decided April 13, 1981 (Docket No. 47321).

### III

Defendant argues that the preclusion sanction found in MCL 768.20a(4); MSA 28.1043(1)(4) violates his Sixth Amendment due process right to present a defense. US Const, Ams VI, XIV; Const 1963, art 1, §§ 17, 20. There is no question that a criminal defendant has a state and federal constitutional right to present a defense. Although not asserted by the defendant, Const 1963, art 1, § 13 provides:

"A suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney."

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their

---

[4] We only address here the propriety of the trial court's application of MCL 768.20a(4); MSA 28.1043(1)(4). We note that we are currently addressing the constitutionality of the guilty but mentally ill verdict. *People v Ramsey,* 89 Mich App 468; 280 NW2d 565 (1979), *lv gtd* 414 Mich 864 (1982).

testimony, he has the right to present his own witnesses to establish a defense. This right is a *fundamental* element of due process of law." *Washington v Texas,* 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). (Emphasis supplied.)

We note that other attempts to address the constitutionality of similar preclusion sanctions, specifically those involving alibi notice statutes, have evaded direct review, and have been decided on nonconstitutional grounds. See *People v Merritt,* 396 Mich 67, 71, 76; 238 NW2d 31 (1976), and cases cited therein.

Although the right to present a defense is a fundamental element of due process, it is not an absolute right. The accused must still comply with "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v Mississippi,* 410 US 284, 302; 93 S Ct 1038; 35 L Ed 2d 297 (1973). Although *Chambers* involved the right to present a witness on one's own behalf, we believe that the above-quoted limitation is equally applicable to the instant statute. Furthermore, although MCL 768.20a(4); MSA 28.1043(1)(4) is specifically concerned with the determinations of competency to stand trial and criminal responsibility, it is clearly a statute designed to assure both fairness and reliability in the ultimate verdict.

We are also persuaded by the argument that there is no constitutional right to assert an insanity defense. See *Powell v Texas,* 392 US 514, 536; 88 S Ct 2145; 20 L Ed 2d 1254 (1968) (Marshall, J.: "Nothing could be less fruitful than for this Court to be impelled into defining some sort of insanity test in constitutional terms"); see also Note, *The Fifth Amendment and compelled psychiatric examinations: Implications of* Estelle v Smith, 50

Geo Wash L R 275, 291 (1982). The Legislature has created definitions of mental illness, MCL 330.1400a; MSA 14.800(400a), and insanity, MCL 768.21a; MSA 28.1044(1). Since these definitions were created by statute, the Legislature's limitations of the circumstances within which they apply do not necessarily raise questions of constitutional proportions. In MCL 768.20a(4); MSA 28.1043(1)(4), it is clearly the Legislature's intent to give discretion to the trial court to determine whether the defense should be barred on the basis of a failure to cooperate.

Defendant initially urges us to adopt a flat proscription against preclusion of evidence of insanity. See *United States v Davis,* 639 F2d 239 (CA 5, 1981). In *Davis,* the trial court prevented two defense witnesses from testifying because their names were not on the witness list provided to the prosecution pursuant to a pretrial discovery order. The *Davis* court held that the Sixth Amendment prevented the exclusion of the two witnesses' testimony solely as a sanction to enforce discovery rules or orders. *Davis, supra,* p 243.

We believe that a flat proscription is inappropriate here. MCL 768.20a(4); MSA 28.1043(1)(4) is not comparable to the pretrial discovery order in *Davis.* The *Davis* court noted that "discovery orders are designed to prevent surprise, not to protect the integrity of the evidence sought to be presented." *Id.* Although a purpose of requiring notice of intent to assert the defense of insanity is to prevent surprise, *People v Giuchici,* 118 Mich App 252; 324 NW2d 593 (1982), the statute involved here is clearly designed to also protect the integrity of the evidence regarding an insanity defense. Full cooperation is required. Only then will both parties and the court have a fair and accurate evaluation

of the defendant's competency to stand trial and criminal responsibility.

Even the *Davis* court acknowledged that an overriding policy consideration could justify a preclusion sanction. We believe that an overriding policy consideration exists here.

In *People v Martin*, 386 Mich 407, 428; 192 NW2d 215 (1971), *cert den* 408 US 929 (1972), we held that a defendant who pleads not guilty by reason of insanity must submit himself to an examination by the people's experts as ordered by the trial court. Similarly, we find here that an overriding policy consideration exists which forms a reasonable basis for the statute's mandatory bar. In Michigan, once the defendant presents evidence of insanity, the prosecution is required to prove defendant's sanity beyond a reasonable doubt. *People v Murphy*, 416 Mich 453; 331 NW2d 152 (1982). This burden is particularly difficult to meet in the context of an insanity defense. Indeed, we have noted that the unique characteristics of the insanity defense require that the defendant be evaluated and probed by a medical expert. *Martin, supra*, p 427. Since the defendant's cooperation is essential to the process, the preclusion of testimony on the basis of a failure to cooperate is not too harsh a sanction. The flat proscription advanced in *Davis, supra*, is therefore inappropriate here.

The defendant alternatively requests us to adopt a balancing approach similar to the one noted in *Fendler v Goldsmith*, 728 F2d 1181 (CA 9, 1984). There, the accused failed to comply with a state criminal discovery rule which required him to provide the prosecution with addresses of certain witnesses. The trial court applied the rule's sanction, and prevented those witnesses from testifying. Fendler argued that the sanction violated his Sixth Amendment right to present a defense. Rele-

vant factors under the balancing approach espoused in *Fendler* include the effectiveness of less severe sanctions, the importance of the precluded witness' testimony, the amount of prejudice and surprise forced on the prosecution, and whether the violation was wilful. *Fendler, supra,* p 1187.

We are not persuaded that *Fendler's* balancing approach is appropriate here. First, MCL 768.20a(4); MSA 28.1043(1)(4) *mandates* preclusion if non-cooperation is established to the trial court's satisfaction. Second, even the *Fendler* court recognized that preclusion sanctions were appropriate when the integrity of the evidence was threatened:

"In those cases where preclusion of testimony by defense witnesses is permitted, it is usually because the integrity of the evidence involved has been threatened. In cases involving defense violations of witness sequestration orders, for example, courts may preclude the witnesses involved from testifying if their testimony was tainted by the lack of sequestration. See, *e.g., Holder v United States,* 150 US 91; 14 S Ct 10; 37 L Ed 1010 (1893); *Braswell v Wainwright,* 463 F2d 1148 (CA 5, 1972). Discovery rules, on the other hand, have no effect on the probative value of otherwise admissible evidence. As the Fifth Circuit has noted, 'discovery orders are designed to prevent surprise, not to protect the integrity of the evidence sought to be presented.' *Davis,* 639 F2d at 243." 728 F2d 1186.

As noted previously, compliance with MCL 768.20a(4); MSA 28.1043(1)(4) is essential to the integrity of the evidence of insanity. The defendant is required to fully cooperate so that the examining psychologist can accurately determine the defendant's competency to stand trial and criminal responsibility at the time of the offense. Here, Hayes' lack of cooperation prevented a definitive conclusion regarding his criminal responsibil-

ity.[5] When, as here, the integrity of the evidence of insanity is threatened, the preclusion sanction is warranted.

We therefore hold that MCL 768.20a(4); MSA 28.1043(1)(4) does not unconstitutionally infringe on a defendant's right to present a defense. We reject the approaches taken in *Davis* and *Fendler,* as unworkable in the present context. The preclusion sanction of the statute is an appropriate means of protecting the integrity, accuracy, and credibility of evidence of insanity.

## IV

Defendant also argues that the statute is unconstitutionally vague. The appropriate test to be applied to this issue was enunciated in *Woll v Attorney General,* 409 Mich 500, 533; 297 NW2d 578 (1980):

"A statute may be challenged for vagueness on the grounds that it

"—is overbroad, impinging on First Amendment freedoms, or

"—does not provide fair notice of the conduct proscribed, or

"—is so indefinite that it confers unstructured and unlimited discretion on the trier of fact to determine whether an offense has been committed."

See *People v Howell,* 396 Mich 16, 20, fn 4; 238 NW2d 148 (1976), citing *Grayned v City of Rockford,* 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972).

Since the defendant does not assert that his First Amendment rights were violated, the first ground in *Woll* is inapplicable.

[5] See footnote 3.

We do not read MCL 768.20a(4); MSA 28.1043(1)(4) in a vacuum, but look to the entire text of the statute to determine whether the requisite certainty exists. See *Winters v New York,* 333 US 507, 518; 68 S Ct 665; 92 L Ed 840 (1947); *Joslin v Campbell, Wyant & Cannon Foundry Co,* 359 Mich 420, 426; 102 NW2d 584 (1960). Whenever possible, courts should construe statutes in such a manner as to render them constitutional. *Bohn Lumber Products Co v Michigan Public Service Comm,* 317 Mich 174, 184; 26 NW2d 875 (1947). For the reasons set forth below, we hold that MCL 768.20a(4); MSA 28.1043(1)(4) is not unconstitutionally vague.

A

The statute provides fair notice of the conduct proscribed. We find that the statute gives a person of ordinary intelligence "a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned, supra.* Here, the "conduct proscribed" is conduct that interferes with the appointed psychologist's ability to perform a statutorily mandated duty. MCL 768.20a(6); MSA 28.1043(1)(6) requires the psychologist to render a professional opinion regarding a defendant's sanity at the time the alleged offense was committed. MCL 768.20a(4); MSA 28.1043(1)(4) quite clearly informs the defendant that non-cooperation will bar the defendant's attempt to present evidence of insanity.

By choosing to assert this defense, a defendant elects to undergo the requisite psychiatric examination. The necessity of full cooperation logically follows from such an election, and it is not at all unreasonable to charge a defendant with notice of such a requirement.

It is apparent from the record before us that Hayes had fair notice of the proscribed conduct. Dr. Stock informed Hayes that the failure to cooperate would bar evidence of an insanity defense. The trial court admonished Hayes on each occasion before sending him back for further evaluation. Although the defendant stated that he was cooperating to the extent of his ability, the trial court had "no doubt" that defendant's non-cooperation was voluntary.

We agree with the Court of Appeals that one of the relevant circumstances is whether a defendant's non-cooperation is in fact caused by mental illness.[6] We can think of certain situations where the failure to cooperate truly will be a result of insanity or mental illness. In those situations, our reasoning that the decision to assert the defense is made with the understanding that cooperation is required does not follow. The statute protects defendants in those situations, by requiring an independent hearing solely to determine whether the defendant fully cooperated. However, such is not the situation before us. This record demonstrates that Hayes' non-cooperation was selective and voluntary.

Under these circumstances, we find that Hayes had fair notice of the conduct proscribed. In this case, such conduct included defendant's refusal to

[6] The Court of Appeals opinion stated:

"The term 'cooperate' has been defined as follows:

" 'to act or work with another or others to a common end: operate jointly . . . to act together: produce an effect jointly . . . .' Webster's Third New International Dictionary, p 501 (Unabridged, 1970).

"In our judgment, the term 'cooperate' has a clearly understood meaning. There is nothing vague about the requirement that a Defendant fully cooperate with the request of those conducting the psychiatric evaluation. Under the statute, it is the function of the trial court to determine whether the Defendant has cooperated within the circumstances of a particular case. We note that one of the relevant circumstances is a Defendant's mental capability to participate in the examination process."

submit to psychological testing, and to answer questions regarding his mental state prior to his wife's death. We note, however, that the statute requires the non-cooperation to be established to the trial court's satisfaction at a hearing prior to trial. Therefore, what specific conduct is prohibited must be determined on a case-by-case basis.

## B

We further find that the statute does not give the trier of fact unstructured and unlimited discretion to determine whether impermissible conduct occurred. *Woll, supra.* The mere fact that the Legislature left this determination up to the trial court does not necessarily mean that the statute is unconstitutionally vague. Considering the statute as a whole, we think its meaning is clear. The statute requires the full cooperation necessary to allow the psychologist to conduct a proper evaluation and reach an opinion regarding either defendant's insanity, mental illness, or mental retardation. MCL 768.20a(6); MSA 28.1043(1)(6).

Defendant argues that there is virtually no act of compliance that is beyond attack for being less than fully cooperative. Furthermore, defendant points to a perceived lack of minimal standards or guidelines to govern law enforcement. See *Kolender v Lawson,* 461 US 352; 103 S Ct 1855; 75 L Ed 2d 903 (1983).

In *Kolender,* the Court applied the vagueness doctrine to a criminal statute that required persons who loiter on the streets to provide "credible and reliable" identification.[7] The Court held that

[7] "Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a

the statute was unconstitutionally vague because it encouraged arbitrary enforcement by failing to sufficiently describe what a suspect must do to satisfy the statute.

*Kolender* is distinguishable from the present case.[8] Neither the First Amendment nor the right to freedom of movement is involved here. Furthermore, the dangers of arbitrary law enforcement do not come into play here, since the statute only operates after an accused has been charged with a crime. Unlike the statutes in the cases appellant cites, MCL 768.20a(4); MSA 28.1043(1)(4) has nothing to do with a law enforcement official's decision to charge a person with a crime.

Defendant asserts that the statute encourages arbitrary enforcement of the preclusion sanction

legislature establish minimal guidelines to govern law enforcement.' *Smith [v Goguen,* 415 US 556, 574; 94 S Ct 1242; 39 L Ed 2d 605 (1974)]. Where the legislature fails to provide such minimal guidelines, a criminal statute may permit 'a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.' *Id.,* at 575; 94 S Ct, at 1248.

"*Section 647(e), as presently drafted and construed by the state courts, contains no standard for determining what a suspect has to do in order to satisfy the requirement to provide a 'credible and reliable' identification. As such, the statute vests virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute and must be permitted to go on his way in the absence of probable cause to arrest.* An individual, whom police may think is suspicious but do not have probable cause to believe has committed a crime, is entitled to continue to walk the public streets 'only at the whim of any police officer' who happens to stop that individual under § 647(e). *Shuttlesworth v City of Birmingham,* 382 US 87, 90; 86 S Ct 211, 213; 15 L Ed 2d 176 (1965). Our concern here is based upon the 'potential for arbitrarily suppressing First Amendment liberties . . . .' *Id.,* at 91, 86 S Ct, at 213. In addition, § 647(e) implicates consideration of the constitutional right to freedom of movement. See *Kent v Dulles,* 357 US 116, 126; 78 S Ct 1113, 1118; 2 L Ed 2d 1204 (1958); *Aptheker v Secretary of State,* 378 US 500, 505-506; 84 S Ct 1659, 1663-1664; 12 L Ed 2d 992 (1964)." 461 US 357-358. (Emphasis supplied.)

[8] We likewise distinguish *Thornhill v Alabama,* 310 US 88, 97-98; 60 S Ct 736; 84 L Ed 1093 (1940), and *Papachristou v City of Jacksonville,* 405 US 156, 170; 92 S Ct 839; 31 L Ed 2d 110 (1972), on similar grounds.

on the basis of the individual whims of the psychologist and trial judge. However, we do not agree that the statute gives unstructured and unlimited discretion to determine the existence of non-cooperation. Instead, the statute allows the trial court to make such a determination on the basis of the psychologist's written report and testimony, as well as the court's personal observations. The psychologist is required to submit a detailed analysis, and substantiate any conclusions that the defendant failed to cooperate. Here, both Dr. Stock and the trial judge went to great lengths to assure themselves that the defendant failed to cooperate. The defendant was examined on three separate occasions.

It also should be noted that the Center for Forensic Psychiatry is an independent branch of the state government. Both parties have the option of obtaining an independent psychiatric examination. The statute requires full cooperation at these independent examinations, as well as any occurring at the Center. Thus, the statutory scheme is intended not only to protect and benefit the public, but also to benefit the defendant by providing for a full and fair determination of competency to stand trial and of criminal responsibility.

Under the statute, the trial court's discretion is sufficiently structured to avoid the constitutional challenge for vagueness.

V

The defendant's constitutional right to present a defense was not violated. Furthermore, the preclusion sanction of MCL 768.20a(4); MSA 28.1043(1)(4) is not unconstitutionally vague. Defendant's conviction is affirmed.

WILLIAMS, C.J., and RYAN, BRICKLEY, and BOYLE, JJ., concurred with CAVANAGH, J.

LEVIN, J. *(dissenting).* The constitutional right of a defendant in a criminal case to present a defense[1] may not be conditioned on the surrender of his constitutional right against self-incrimination.[2]

The majority holds that a defendant may be precluded from presenting any evidence relating to the issue of sanity if the trial court finds that he has not cooperated fully in a psychiatric examination conducted by personnel of the Center for Forensic Psychiatry.[3] The impermissible effect of this decision is to impose a trade-off of fundamental constitutional rights; a defendant is required to relinquish the right to decline to speak if he wishes to exercise the right to respond with competent and probative evidence to an element of the charged offense.

I

Defendant Larry Hayes was charged with first-degree murder.[4] He filed notice of his intent to offer an insanity defense. The circuit judge ordered him committed to the Center for Forensic Psychiatry to determine his competency to stand trial and the extent of his criminal responsibility because of the possibility of mental illness at the time of the offense. The forensic examiner testified at pretrial competency hearings that Hayes refused to cooperate and that, therefore, there was insufficient evidence to support a finding that Hayes was mentally ill or legally insane at the time of the offense.

[1] Const 1963, art 1, §§ 13, 20; US Const, Am VI, applicable to the states under the Fourteenth Amendment; *Washington v Texas,* 388 US 14; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).

[2] Const 1963, art 1, § 17; US Const, Am V, applicable to the states under the Fourteenth Amendment; *Malloy v Hogan,* 378 US 1; 84 S Ct 1489; 12 L Ed 2d 653 (1964).

[3] MCL 768.20a(4); MSA 28.1043(1)(4).

[4] MCL 750.316; MSA 28.548.

The prosecutor filed a motion seeking to bar the defendant from presenting testimony relating to his alleged insanity.[5] The circuit judge granted the motion[6] and Hayes was not allowed to "present [his] version of the facts"[7] on the issue of his sanity. Several lay witnesses for the people, however, offered testimony concerning Hayes' behavior and statements that would be probative of his sanity or insanity at the time of the offense. The jury returned a verdict of guilty and the Court of Appeals affirmed.

---

[5] At the time of trial the statute provided:

"The defendant shall fully cooperate in his examination by personnel of the center for forensic psychiatry and by any other independent examiners for the defense and prosecution. If he fails to cooperate, and that failure is established to the satisfaction of the court at a hearing prior to trial, the defendant shall be barred from presenting testimony relating to his insanity at the trial of the case." MCL 768.20a(4); MSA 28.1043(1)(4).

The statute was amended by 1983 PA 42 to provide:

"The defendant shall fully cooperate in his *or her* examination by personnel of the center for forensic psychiatry *or by other qualified personnel,* and by any other independent examiners for the defense and prosecution. If he *or she* fails to cooperate, and that failure is established to the satisfaction of the court at a hearing prior to trial, the defendant shall be barred from presenting testimony relating to his *or her* insanity at the trial of the case." (Changes emphasized.)

[6] The order prohibited the defendant from "offering any evidence as to the defense of insanity in any trial held in this matter." The defendant testified at trial. Consistent with the order, he offered no testimony concerning his sanity or insanity. Nevertheless, the jury was instructed on insanity because the circuit judge felt that the issue had been raised implicitly by the defendant's mannerisms and actions at trial.

The jury instruction on insanity did not negate the defendant's claim that his right to present a defense had been denied. Psychiatric diagnoses based only on the observation of mannerisms, facial expressions, speech patterns, and the like may differ from those based on the verbal *content* of communications. See *Estelle v Smith,* 451 US 454, 464, fn 8; 101 S Ct 1866; 68 L Ed 2d 359 (1981). If professional diagnoses may vary depending on such factors, so too may a jury's finding on the defendant's sanity under the reasonable doubt standard.

[7] *Washington v Texas,* 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).

## II

The statute provides that a defendant who indicates an intention to assert an insanity defense is required to submit to a psychiatric examination by personnel of the Center for Forensic Psychiatry.[8] The statute further provides that the defendant may be barred from presenting testimony relating to his insanity if he fails to cooperate fully in the examination.[9]

### A

The fundamental right to remain silent protects an accused person against "testimonial compulsion" and "enforced communication."[10] In *Estelle v Smith,* 451 US 454; 101 S Ct 1866; 68 L Ed 2d 359 (1981), the United States Supreme Court held that the Fifth Amendment bars the state from using at a sentencing hearing the testimony[11] of a psychiatrist who conducted a court-ordered pretrial examination when the defendant was not informed of his right to remain silent.[12] The Court rejected the argument that the examination and the information received during the examination were not testimonial. *Id.,* pp 463-465.

A defendant also has a fundamental right to

---

[8] MCL 768.20a(2); MSA 28.1043(1)(2).

[9] MCL 768.20a(4); MSA 28.1043(1)(4). See fn 5.

[10] *Schmerber v California,* 384 US 757, 765; 86 S Ct 1826; 16 L Ed 2d 908 (1966).

[11] The testimony was used to establish the defendant's "future dangerousness," proof of which was required under the Texas statute as a predicate for imposition of the death penalty.

[12] In the instant case, there is no indication in the record that the defendant was informed of his right to remain silent before the psychiatric examination. It appears, rather, the defendant was informed that failure to cooperate would preclude him from raising an insanity defense.

present witnesses to establish a defense.[13] It is generally a defense that the defendant is not criminally responsible for his actions because of insanity. The sanity of a defendant is presumed;[14] the right to present a defense includes the right to offer competent evidence to rebut that presumption.[15] Such evidence need not be in the form of expert testimony; it might include presentation of medical records or lay testimony[16] or the defendant's own testimony. This Court has held that while a defendant who failed to give notice of an alibi defense might be precluded from offering testimony of other persons in support of such a defense, he may not himself be precluded from giving alibi testimony. *People v Merritt,* 396 Mich 67; 238 NW2d 31 (1976).

The statute bars the defendant from presenting *any* testimony relating to insanity if he remains silent at the mandatory psychiatric examination. The bar is lifted, however, if the defendant cooperates fully. The threat of an absolute preclusion of the insanity defense may induce some defendants to discuss the details of the offense with the forensic examiner.[17] Those who refuse to do so will be

[13] *Washington v Texas,* 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967).

[14] *People v Murphy,* 416 Mich 453, 463; 331 NW2d 152 (1982).

[15] Once evidence of insanity is introduced, the prosecution bears the burden of establishing defendant's sanity beyond a reasonable doubt. *People v Murphy,* 416 Mich 453, 463-464; 331 NW2d 152 (1982). The Court declares that since this burden is particularly difficult in the context of the insanity defense and since the defendant's cooperation is essential to psychiatric evaluation, preclusion of testimony "is not too harsh a sanction." Ante, p 281. The prosecution's need for evidence cannot, however, justify the outright denial of a fundamental constitutional right. Further, the rationale based on the necessity of the defendant's cooperation for reliable psychiatric evaluation applies only where the defendant seeks to introduce *expert* psychiatric testimony and the prosecution seeks to offer responsive expert testimony. See part B.

[16] See *Blaisdell v Commonwealth,* 372 Mass 753, 763-766; 364 NE2d 191 (1977).

[17] See Lefelt, *Pretrial mental examinations: Compelled cooperation*

penalized[18] for exercising their constitutional right to remain silent.

The people bear the burden of proving beyond a reasonable doubt every element of the charged offense.[19] The people by charging that the defendant committed a criminal offense implicitly assert that he was sane at the time it was committed. The state may not preclude the defendant from exercising his constitutional right to offer evidence on the issue of sanity/insanity because he refused to submit to an examination by a psychiatrist employed by the state.

## B

Expert testimony offered on behalf of a defendant probative of his insanity is subject to cross-examination and impeachment. Accordingly, a defendant who gives notice of an insanity defense may be required to submit to a psychiatric examination so that *if he calls an expert witness,* the people can offer responsive expert testimony without delaying the trial to interview the defendant. If, however, the defendant decides, after submit-

*and the Fifth Amendment,* 10 Am Crim L R 431, 463 (1972).

The inducement cannot be excused on the basis that statements made to the examiner are admissible under MCL 768.20a(5); MSA 28.1043(1)(5) only to show sanity or insanity. Any use of an involuntary confession in a criminal trial is violative of the Due Process Clause, *Mincey v Arizona,* 437 US 385, 398; 98 S Ct 2408; 57 L Ed 2d 290 (1978), and cannot constitute harmless error, *Malinski v New York,* 324 US 401, 404; 65 S Ct 781; 89 L Ed 2d 1029 (1945).

[18] See *Malloy v Hogan,* 378 US 1, 8; 84 S Ct 1489; 12 L Ed 2d 653 (1964); *Spevack v Klein,* 385 US 511, 515; 87 S Ct 625; 17 L Ed 2d 574 (1967). The denial of a constitutional right—such as the right to present a defense—itself constitutes a penalty. Preclusion of competent evidence of insanity, moreover, effectively eliminates the possibility of responding to the presumption of sanity and thus increases the likelihood of conviction and imprisonment *regardless* of the actual mental culpability of the defendant. See Note, *The preclusion sanction—A violation of the constitutional right to present a defense,* 81 Yale L J 1342, 1361 (1972).

[19] *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970).

ting to an examination by a psychiatrist employed by the state, not to call an expert witness, the people may not offer the testimony of the state psychiatrist since the reason for the pretrial psychiatric examination—facilitating the trial—is no longer operative.[20]

In *Estelle v Smith, supra,* the United States Supreme Court, while holding that the Fifth Amendment protects against use of statements made during a compelled psychiatric examination, indicated that required "sanity examinations" may be permissible where the defendant seeks to introduce his own "supporting psychiatric testimony."[21] Both the Federal Rules of Criminal Procedure[22] and the recently adopted American Bar Association Standards for Criminal Justice[23] provide that failure to cooperate during a court-ordered psychiatric examination permits the court to exclude testimony by expert witnesses offered by the defendant. The ABA standards expressly provide that

[20] See *Battie v Estelle,* 655 F2d 692, 702 (CA 5, 1981) (submission to a psychiatric examination does not constitute waiver of Fifth Amendment privilege unless defendant introduces testimony of a mental health expert); *People v Brown,* 399 Mich 350, 365; 249 NW2d 693 (1976) (LEVIN, J., *dissenting).*

[21] "When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof. . . ." *Estelle v Smith,* 451 US 454, 465; 101 S Ct 1866; 68 L Ed 2d 359 (1981).

[22] FR Crim P 12(d).

[23] "If the court determines that an adequate evaluation of defendant's mental condition at the time of the alleged crime has been precluded because defendant has refused to cooperate with the mental health or mental retardation professional, and that the refusal was not a result of defendant's mental illness or mental retardation, the court, in its discretion, may exclude the introduction at trial of testimony by a mental health or mental retardation professional offered by defendant concerning defendant's mental condition at the time of the alleged crime. Other proof of defendant's mental condition at the time of the alleged crime may be offered by defendant and, if otherwise competent, such evidence should be admissible."

ABA Standards for Criminal Justice 7-3.4(c) (2d ed, 1980) (adopted August 7, 1984).

the court should not exclude other proof of the defendant's mental condition.[24]

If the consequence of failing to cooperate with a forensic examiner is limited to the preclusion of expert testimony offered by the defense, the constitutional rights to present a defense and remain silent are not necessarily infringed.[25] A defendant might choose to remain silent during a compelled psychiatric examination and yet be permitted to offer competent evidence, other than expert testimony, probative of insanity.

## III

MCL 768.20a(4); MSA 28.1043(1)(4) is unconstitutional to the extent that it precludes a defendant from offering any evidence probative of insanity unless he submits to a court-ordered psychiatric examination.

Because the defendant was barred from presenting any evidence probative of insanity, his conviction should be reversed and the cause should be remanded for a new trial.

KAVANAGH, J., concurred with LEVIN, J.

[24] *Id.*

[25] The view has been expressed that even the preclusion of expert testimony offered by the defense is an improper sanction for failure to cooperate with a court-appointed psychiatrist. Lefelt, *Pretrial mental examinations: Compelled cooperation and the Fifth Amendment,* 10 Am Crim L R 431 (1972); Note, *Requiring a criminal defendant to submit to a government psychiatric examination: An invasion of the privilege against self-incrimination,* 83 Harv L R 648 (1970).