*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT MICHAEL FREEBOLD,

Defendant-Appellant.

UNPUBLISHED
January 13, 2025
2:27 PM

No. 366178
Benzie Circuit Court
LC No. 2022-002851-FC

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

Defendant appeals by right his convictions, following a jury trial, of three counts of first-degree premeditated murder, MCL 750.316(1)(a). Defendant was sentenced to serve life in prison without the possibility of parole. We affirm.

## I. FACTUAL BACKGROUND

When police responded to a dropped 911 call from defendant's phone, they found defendant lying in the open front door of his home with a towel clutched to his face. Inside, defendant's ex-wife, Marilyn, his son, Bobby, and Marilyn's son, Malachi, were lying in pools of blood. Guns were found by Bobby and Malachi. According to Marilyn's daughter, defendant had recently rekindled a relationship with Marilyn and had moved into the home after Malachi's father had moved out. She also testified that, when Marilyn was driving her home the afternoon before the murders, Marilyn had reported that she felt unsafe because Malachi had physically intervened in a heated argument between Marilyn and defendant and knocked defendant down about two weeks before.

Law-enforcement and emergency-service responders initially thought that defendant had been shot, and he was taken to the hospital. When he was first interviewed, defendant had a breathing tube and could not speak. By responding to yes-or-no questions with his fist, defendant indicated that he had been hit twice in the head with a gun by Malachi and that Bobby had shot Marilyn and Malachi. A blood-spatter analyst opined that Bobby could not have moved from where he initially had been shot to where he was found dead if Malachi had been present in the hallway where he was found. The analyst also opined that Malachi's body may have been "staged"

-1-

and that defendant was the only person who could have been responsible for bloodstains in the master bedroom, including his own blood inside the bedroom's locked gun safe. The jury ultimately found defendant guilty as previously described.

## II. INSANITY DEFENSE

Defendant argues that the trial court erred by precluding him from presenting an insanity defense on the basis that his failure to cooperate with a criminal-responsibility evaluation should be excused.

We review the trial court's decision regarding a defendant's cooperation with a criminal-responsibility evaluation for an abuse of discretion, see *People v Hayes*, 421 Mich 271, 280; 364 NW2d 635 (1984), which occurs when its decision falls outside the range of principled outcomes or when it makes an error of law, *People v Christian*, 510 Mich 52, 75; 987 NW2d 29 (2022).

"It is an affirmative defense to a prosecution for a criminal offense that the defendant was legally insane when he or she committed the acts constituting the offense." MCL 768.21a(1). The procedures to assert an insanity defense are provided in MCL 768.20a, which states in pertinent part:

> (1) If a defendant in a felony case proposes to offer in his or her defense testimony to establish his or her insanity at the time of an alleged offense, the defendant shall file and serve upon the court and the prosecuting attorney a notice in writing of his or her intention to assert the defense of insanity . . . .

> (2) Upon receipt of a notice of an intention to assert the defense of insanity, a court shall order the defendant to undergo an examination relating to his or her claim of insanity by personnel of the center for forensic psychiatry or by other qualified personnel, as applicable, for a period not to exceed 60 days from the date of the order. When the defendant is to be held in jail pending trial, the center or the other qualified personnel may perform the examination in the jail, or may notify the sheriff to transport the defendant to the center or facility used by the qualified personnel for the examination, and the sheriff shall return the defendant to the jail upon completion of the examination. . . .

> (3) The defendant may, at his or her own expense, secure an independent psychiatric evaluation by a clinician of his or her choice on the issue of his or her insanity at the time the alleged offense was committed. If the defendant is indigent, the court may, upon showing of good cause, order that the county pay for an independent psychiatric evaluation. The defendant shall notify the prosecuting attorney at least 5 days before the day scheduled for the independent evaluation that he or she intends to secure such an evaluation. The prosecuting attorney may similarly obtain independent psychiatric evaluation. A clinician secured by an indigent defendant is entitled to receive a reasonable fee as approved by the court.

> (4) The defendant shall fully cooperate in his or her examination by personnel of the center for forensic psychiatry or by other qualified personnel, and by any other independent examiners for the defense and prosecution. If he or she

fails to cooperate, and that failure is established to the satisfaction of the court at a hearing prior to trial, the defendant shall be barred from presenting testimony relating to his or her insanity at the trial of the case.

"The defendant is required to fully cooperate so that the examining psychologist can accurately determine the defendant's competency to stand trial and criminal responsibility at the time of the offense." *Hayes*, 421 Mich at 282. The insanity-defense statute is designed to protect the integrity of the evidence concerning an insanity defense, and full cooperation is required for the parties and court to "have a fair and accurate evaluation of the defendant's competency to stand trial and criminal responsibility." *Id*. at 280-281.

We are not definitely and firmly convinced that the trial court made a mistake by barring defendant from presenting an insanity defense under these circumstances. The record states that the psychologist had seen defendant twice before for other evaluations, and defendant had previously refused to participate in an evaluation over teleconferencing software and had been taken for an in-person evaluation. When the psychologist attempted to conduct the criminal-responsibility evaluation at issue over teleconferencing software, she saw defendant through the camera, and she introduced herself. Defendant then looked at the camera, did not respond verbally, stayed in the room for "all of five minutes," then asked to be let out and left the room. The psychologist was not able to complete the interview. After the hearing, the trial court determined that defendant knew who the psychologist was and chose to walk out and not cooperate. These facts support the trial court finding.

Defendant argues before this Court, as he did in the trial court, that he left only because he was told that it was the wrong type of examination, and that is not a basis to find he did not cooperate. However, the trial court found that defendant had chosen to walk out, regardless of whether he had been told that it was the correct type of examination, and on appeal defendant does not explain how this would render the court's finding that he did not cooperate clearly erroneous. After all, defendant is required to "fully cooperate in his or her examination by personnel of the center for forensic psychiatry or by other qualified personnel, *and* by any other independent examiners for the defense and prosecution." MCL 768.20a(4) (emphasis added). Regardless of which type of evaluation defendant thought that he was being asked to participate in, his lack of cooperation warranted preclusion of his insanity defense.[1]

Defendant posits that the trial court erred by relying on MCR 6.006 to conclude that videoconferencing was appropriate for defendant's criminal-responsibility evaluation.

---

[1] We reject the argument that the trial court failed to focus on whether defendant, who had notified the court about a hearing impairment, was having trouble communicating. It is true that defendant notified the court that he had a hearing impairment, but the trial court addressed the matter. It asked whether defendant could hear the court at every hearing, agreed that defendant could be present in person at future hearings, and offered defendant a hearing device and copies of transcripts to assist him. Defendant's attorney later averred that defendant had been provided with a transcript of every hearing. The record does not support the notion that the court disregarded defendant's hearing impairment.

Specifically, he argues that his criminal-responsibility evaluation was an "other proceeding" for which the use of videoconferencing technology is not preferred under this court rule.

At the time of defendant's case, MCR 6.006 provided in pertinent part:

(A) Generally.

(1) Except as otherwise provided by this rule, the use of videoconferencing technology under this rule is subject to MCR 2.407.

(2) A court may, at the request of any participant, or sua sponte, allow the use of videoconferencing technology by any participant in a criminal proceeding.

(3) When determining whether to utilize videoconferencing technology, the court shall consider constitutional requirements, in addition to the factors contained in MCR 2.407.

* * *

(B) Mode and Proceedings in Cases Cognizable in the Circuit Court.

(1) *Generally*. Circuit courts may use videoconferencing technology to conduct any non-evidentiary or trial proceeding.

(2) *Preferred Mode*. The use of videoconferencing technology shall be preferred for the following proceedings:

(a) initial arraignments on the information;

(b) pretrial conferences;

(c) motions pursuant to MCR 2.119; and

(d) Pleas.

* * *

(3) *Presumed Mode*. In all other proceedings, the in-person appearance of the parties, witnesses, and other participants is presumed. [MCR 6.006, as amended by 510 Mich xxxiv (2022).]

When considering the language of MCR 6.006 and MCR 2.407 in context, *Honigman Miller Schwartz & Cohn LLP v Detroit*, 505 Mich 284, 318; 952 NW2d 358 (2020), there is no indication that a criminal-responsibility evaluation is a "proceeding." Explicitly mentioned proceedings are arraignments, pretrial conferences, motions, and pleas. MCR 6.006(B)(2). All of these proceedings take place within a courtroom. Further, the factors a court should consider when deciding whether to allow videoconferencing technology during a proceeding largely focus on *the courtroom*. See former MCR 2.407(C)(3), (5), (7), and (8). There is no indication that a criminal-responsibility evaluation is similar to the types of proceedings to which MCR 6.006 applies, and

the trial court was not required to presume that defendant was entitled to be present in person for his criminal-responsibility evaluation.[2]

### III. SUBSTITUTION OF COUNSEL

Defendant argues that the trial court abused its discretion by denying his motion to substitute counsel because his public defender (1) had previously represented one of the victims, (2) was not diligent and did not communicate with defendant, and (3) failed to provide defendant with materials necessary to the defense, all of which constituted good cause. We review for an abuse of discretion a trial court's decision affecting a defendant's right to counsel of choice. *People v Akins*, 259 Mich App 545, 556-557; 675 NW2d 863 (2003).

The United States and Michigan Constitutions provide that an accused is entitled to counsel to assist in the defense. US Const, Am 6; Const 1963, art 1, § 20. However, the right to counsel of choice is "limited and may not extend to a defendant under certain circumstances." *People v Bailey*, 330 Mich App 41, 56; 944 NW2d 370 (2019) (quotation marks and citation omitted). An indigent defendant is not entitled to the attorney of his choice or to have the trial court replace the originally-appointed attorney on request. *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015). The trial court may appoint substitute counsel "only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Id*. at 382-383 (quotation marks and citation omitted).

Good cause exists when a defendant and appointed counsel have a legitimate difference of opinion regarding a fundamental trial tactic, when there is a breakdown of the attorney-client relationship, or when the defendant's appointed counsel lacks diligence or is disinterested. *Id*. at 383. Neither the defendant's general unhappiness with appointed counsel nor the defendant's disagreement with counsel's professional judgment are good causes to appoint substitute counsel. *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). Similarly, a defendant's lack of confidence in appointed counsel is not good cause unless the defendant supports the lack of confidence with a substantial reason. *Id*. "A defendant may not purposely break down the attorney-client relationship by refusing to cooperate with his assigned attorney and then argue that there is good cause for a substitution of counsel." *People v Meyers (On Remand)*, 124 Mich App 148, 166-167; 335 NW2d 189 (1983).

"[I]n order to demonstrate that a conflict of interest has violated his Sixth Amendment rights, a defendant 'must establish that an actual conflict of interest adversely affected his lawyer's

---

[2] To the extent defendant argues that the trial court's ruling that he could not present an insanity defense infringed on his constitutional right to present a defense, it is without merit. "[T]here is no constitutional right to assert an insanity defense." *Hayes*, 421 Mich at 279. Further, although the right to present a defense is a fundamental element of due process, it is not an absolute right, and the defendant must still comply with procedural rules. *Id*. Defendant's failure to comply with the procedural requirements of MCL 768.20a, resulting in the prevention of his presenting an insanity defense, did not deprive him of his constitutional right to present a defense.

performance.' " *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998), quoting *Cuyler v Sullivan*, 446 US 335, 350; 100 S Ct 1708; 64 L Ed 2d 333 (1980). This Court presumes that the defendant was prejudiced only if (1) counsel actively represented conflicting interests, and (2) the conflict adversely affected counsel's performance. *Smith*, 456 Mich at 556.

Here, defendant was initially represented by the public defender's office. He substituted counsel in February 2021, and fired substitute counsel in February 2022. He requested the appointment of a panel of attorneys or the appointment of an attorney who was not one of four listed attorneys. The trial court again ordered defendant to be represented by the public defender's office. Defendant then requested to remove his public defender in August 2022, arguing that his attorney had a conflict of interest because he had represented one of the victims and that the defender had lacked diligence in a variety of ways. At the hearing, the defender explained that he had represented Bobby, who had been the subject of a guardianship, in November 2016. At that time, he had not learned anything about defendant and was not even aware of where defendant was, and he did not remember representing Bobby until defendant drew it to the court's attention. The court determined that defendant had not established good cause to remove the defender, and it noted that the amount of time defendant alleged that the defender had lacked diligence was not possible because he had not been defendant's attorney for that long.

Defendant subsequently filed repeated motions to substitute counsel, and the trial court investigated each allegation on the record and determined that defendant had not established good cause to warrant substituting counsel. We discern no error in the trial court's diligent inquiries into defendant's concerns. Defendant filed pro se motions regarding witnesses he had not mentioned to counsel, and counsel agreed to investigate those witnesses or indicated that they already had been investigated. Defendant filed a pro se motion concerning other-acts evidence, began to argue it, and requested that the defender finish the argument. Further, despite many allegations that the defender was not meeting with him frequently enough, defendant refused to meet with the defender as the case was approaching trial. In light of this fact, we are not convinced that the court erred when it found that defendant was deliberately attempting to sabotage his attorney-client relationship. The court's determination that defendant was engaged in "nothing but gamesmanship," and that his attorneys had performed their constitutional duties, is supported by the record.[3]

## IV. STANDARD 4 BRIEF

In defendant's Standard 4 brief, he asserts a variety of errors. None have merit.

First, defendant raises issues concerning the effective assistance of counsel. A defendant must move the trial court for a new trial or evidentiary hearing to preserve an argument that counsel provided ineffective assistance. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). Or, the argument can be preserved if the defendant files a motion with this Court to remand for a

---

[3] Concerning the unsworn affidavit defendant provided in support of this argument, we note that it duplicates many of the allegations that defendant made before the lower court or contradicts facts in the established lower court record. To the extent that it does not duplicate those allegations, it is contrary to statements made in proofs of service before the lower court.

*Ginther* hearing, even if this Court denies the motion. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Defendant has not properly preserved his arguments. When considering unpreserved arguments of ineffective assistance of counsel, this Court's review is limited to mistakes apparent from the record. *People v Riley*, 468 Mich 135, 139; 659 NW2d 611 (2003).

A criminal defendant has a fundamental right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 653-654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). The United States Supreme Court has observed that the rights to counsel, due process, and a fair trial are intertwined:

> [T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause[.] [*Strickland v Washington*, 466 US 668, 684-685; 104 S Ct 2052; 80 L Ed 2d 674 (1984).]

First, defendant argues that defense counsel assisted the prosecutor in convicting him by offering exhibits "for the people" and that defense counsel denied consideration of his March 1, 2023 pro se subpoena, which established that counsel was biased against him in favor of the prosecution. Defendant appears to refer to his objection to a stipulation that he was the owner of one of the pistols involved in the shooting. Defense counsel did not provide ineffective assistance by offering this stipulation.

What evidence to present is a matter of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Although counsel's strategic decisions must be objectively reasonable, the defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023). When presuming that counsel rendered effective assistance, this Court should "affirmatively entertain the range of possible reasons . . . counsel may have had for proceeding as they did." *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (quotation marks and citation omitted).

There is no indication that stipulating to this fact was an unsound trial strategy. Defense counsel may have thought that challenging who owned the pistol would undermine the credibility of the defense by contesting an easily proven fact. An attorney may reasonably decide that it is better to not draw attention to something at trial. See *People v Eliason*, 300 Mich App 293, 303; 833 NW2d 357 (2013) (concerning objections to improper comments). There was already evidence in the record that there was a receipt for the other handgun in one of defendant's safes. Defense counsel may reasonably have thought that challenging the ownership of the second gun would draw attention to the fact that defendant owned both guns and decided that it was better to not draw attention to those facts at trial.

Next, defendant argues that his counsel provided ineffective assistance by failing to present any evidence, including failing to present early crime-scene photographs and failing to subpoena witnesses. However, defendant has not established on appeal that the witnesses would have

testified favorably, and regardless, the record reflects that counsel investigated defendant's proposed witnesses. Defendant has abandoned his argument regarding the early crime-scene photographs because he has not supported this statement with any discernable argument.

Defense counsel's decisions regarding which witnesses to call and how to question the witnesses are matters of trial strategy. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015). A defendant asserting an ineffective-assistance claim has the burden to establish the factual predicate for the claim. *People v Loew*, 340 Mich App 100, 120-121; 985 NW2d 255 (2022), aff'd ___ Mich ___; ___ NW3d ___ (2024) (Docket No. 164133). Without some indication that the witness would have offered evidence favorable to defendant, a defendant cannot establish that counsel's failure to call the witness constituted ineffective assistance. *People v Carll*, 322 Mich App 690, 703; 915 NW2d 387 (2018).

The record reflects that defendant initially did not raise these possible witnesses with his counsel. When the issue was explored on the record, defense counsel was familiar with the medical witnesses and had considered whether they would be acceptable, and he was willing to discuss the witnesses with defendant. Further, because defendant has not presented any evidence that these witnesses would have testified favorably, he has not established that counsel's decisions were unreasonable or prejudicial.

Additionally, from defendant's argument, it is unclear how defense counsel's failure to present early crime-scene photographs was an unreasonable or prejudicial decision. Defendant merely describes this evidence as exculpatory: he does not explain how it is so. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (quotation marks and citation omitted). We cannot analyze an argument that has no rationale, and we deem this argument abandoned.

Third, defendant argues that counsel pursued an unreasonable strategy by failing to present a case-in-chief and instead arguing "we don't know." The record does not support defendant's argument.

The party seeking reversal on appeal has the burden to provide the Court with a record that establishes the factual basis of the argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). Defense counsel's closing argument set forth the theory that Malachi had assaulted defendant before, had assaulted him that night, and that it was possible that Bobby, like the first responders, had thought that defendant had been shot. Defense counsel posited that Bobby could have retrieved the gun from the safe and that he may have decided to shoot himself in the head after the incident. The record does not support that defense counsel offered no theory in defendant's defense.

Fourth, defense counsel did not provide ineffective assistance by failing to request to remove one juror who had previous interactions with defendant and was ultimately elected jury foreperson, and a second juror who was sleeping or crying throughout the trial. Again, there is no support in the record for these arguments. Review of the voir dire of the jury foreperson does not support defendant's argument that he knew defendant, and the record contains no evidence that a juror was crying or sleeping. Defendant's arguments that counsel biased the jury by treating him

with contempt or leaning away from him as if he was offensive fail for the same reason. The existing record contains no evidence of these nonverbal cues.

Fifth, defendant argues that defense counsel provided ineffective assistance by failing to request altered jury instructions and by allowing vague jury instructions to be presented. Whether to request a particular jury instruction is a matter of trial strategy. See *People v Matuszak*, 263 Mich App 42, 59-60; 687 NW2d 342 (2004). However, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *Iannucci*, 314 Mich App at 545 (quotation marks and citation omitted). Because defendant has not identified what instructions defense counsel should have requested or which instructions were allegedly vague, it is not possible to meaningfully analyze this argument. Regardless, we note that counsel did request altered jury instructions and successfully obtained an instruction on the lesser offense of voluntary manslaughter, and we have identified no obviously vague instructions.

Sixth, defendant argues that defense counsel provided ineffective assistance by failing to provide him with the complete case file and photographs. Proofs of service in the lower court file indicate that defendant was provided with copies of hearing transcripts, CDs of crime-scene photographs, his own motions, and the entire lower court file. There is no error apparent from the record.

Seventh, defendant argues that counsel provided ineffective assistance by failing to introduce evidence of a prior assault case involving one of the victims. Defense counsel is not required to make meritless or futile objections. *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015). Generally, evidence regarding a person's other crimes, wrongs, or acts is not permissible to establish that a person acted in accordance with that character on a particular occasion. MRE 404(b)(1). There is no indication that defense counsel provided ineffective assistance by failing to attempt to admit evidence that there had been an assault case involving one of the victims.

Eighth, defendant argues that the prosecutor committed misconduct by relying on a picture of a blood drop in closing argument that was not admitted during trial. Defendant has abandoned this issue by failing to support it.

A prosecutor can deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). A prosecutor may not argue the effect of facts that were not admitted as evidence. *People v Stanaway*, 446 Mich 643, 686; 521 NW2d 557 (1994). However, "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . ." *Iannucci*, 314 Mich App at 545 (quotation marks and citation omitted). Over 150 exhibits were marked and received, and defendant has not identified which photograph the prosecutor referred to in closing that allegedly was not in evidence. Again, we will not discover and rationalize the basis for this argument on defendant's behalf.

Ninth, defendant argues that the victim's family made loud remarks in the presence of the jury. Again, the record does not contain any support for defendant's assertion that such an outburst occurred, and without any record support, defendant's argument fails.

Tenth, defendant argues that he was not provided with a copy of his information or indictment. However, proof of service indicates that defendant was provided a copy of the lower court file, which included his felony information.

Eleventh, defendant requests a change of venue. "The general venue rule is that defendants should be tried in the county where the crime was committed." *People v Houthoofd*, 487 Mich 568, 579; 790 NW2d 315 (2010). The crime and trial occurred in Benzie County. Defendant's argument lacks merit.

Finally, we deem the rest of defendant's arguments abandoned. Defendant's question regarding how a crime lab could adequately investigate a scene in five hours is unaccompanied by a legal argument and appears to be rhetorical. Defendant has not identified what evidence was suppressed or explained how it was exculpatory. He asserts that his rights under the Fourth Amendment to the United States Constitution were violated, but he does so in a conclusory fashion, without even the barest of arguments. Finally, he argues that the Model Rules of Professional Conduct were violated. Again, defendant asserted this position without any rationalization, including how the Model Rules of Professional Conduct should apply in his case or how such applications were violated.

Affirmed.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates