PEOPLE v POSBY

Docket No. 177992. Submitted August 6, 1997, at Grand Rapids. Decided December 30, 1997, at 9:00 A.M.

Chester L. Posby was found guilty but mentally ill of first-degree murder by a jury in the Washtenaw Circuit Court, Kurtis T. Wilder, J. He appealed, alleging that the trial court erred in denying defense counsel's request at trial to have the defendant stop taking his antipsychotic medication for only three days to allow the defendant to testify while unmedicated so that the jury could observe the defendant on the witness stand as he was at the time of the shooting, in an unmedicated state. The only disputed issue for the jury to determine at trial was the defendant's sanity at the time of the offense.

The Court of Appeals *held*:

The court erred in denying the request. The defendant's conviction must be reversed and the matter must be remanded for a new trial.

1. The defendant's constitutional right to present a defense and his liberty interest to be free from antipsychotic medication were implicated. The state's statutory right to a speedy trial does not outweigh the defendant's constitutionally based liberty interest.

2. It was not proved that the administration of the medication would advance the state's essential state policy of protecting the defendant and those around him. The court erred in finding that the defendant failed to show that his presentation on the witness stand while in an unmedicated state would have approximated his mental state at the time of the shooting.

3. The request to be free from medication for only three days accommodated and did not implicate the question of the defendant's competency during the trial that already had been decided when the trial court ruled, in response to the defendant's original unlimited request to be removed from the medication during his trial, that the administration of the medication advanced the essential state policy of maintaining the defendant's competency during the trial.

4. An essential state interest did not outweigh the trial prejudice that occurred in not allowing the defendant to testify while unmedicated.

Reversed and remanded.

HOLBROOK, JR., J., dissenting, stated that the involuntary administration of the defendant's medication advanced the essential state policies of maintaining his competency during the trial and protecting the safety of the defendant and those around him. The defendant failed to show that his demeanor while unmedicated would have approximated his demeanor at the time of the shooting. The jury was informed of the effects of the medication on the defendant, therefore the jury's evaluation of the defendant's insanity defense did not rest on undisclosed behavioral alteration but was the result of an informed consideration of the defendant's altered behavior. The state's essential interest in continuing the trial and maintaining the safety of the defendant and others outweighed the defendant's interest in presenting evidence of insanity through his demeanor on the witness stand. The conviction should be affirmed.

1. CRIMINAL LAW — CONSTITUTIONAL LAW — INVOLUNTARY ADMINISTRATION OF ANTIPSYCHOTIC DRUGS.

A defendant has a liberty interest in freedom from the involuntary administration of an antipsychotic drug, and that interest is protected by the Due Process Clause of the Fourteenth Amendment; the state can satisfy due process in a trial or pretrial setting involving the involuntary administration of an antipsychotic drug where the prosecution demonstrates, and the trial court finds, that treatment with antipsychotic medication is medically appropriate and, considering less intrusive alternatives, is essential for the defendant's own safety or the safety of others; the state might also justify medically appropriate, involuntary treatment with antipsychotic medication by establishing that it could not obtain an adjudication of the defendant's guilt or innocence by using less intrusive means.

2. CRIMINAL LAW — CONSTITUTIONAL LAW — SPEEDY TRIAL — INVOLUNTARY ADMINISTRATION OF ANTIPSYCHOTIC DRUGS.

A criminal defendant's liberty interest to be free from the involuntary administration of an antipsychotic drug is protected by the Due Process Clause of the Fourteenth Amendment and outweighs the state's statutory right to a speedy trial (MCL 768.1; MSA 28.1024).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Brian L. Mackie*, Prosecut-

ing Attorney, and *David A. King*, Senior Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Lyle N. Marshall*), and Chester L. Posby, in propria persona, for the defendant on appeal.

Before: CAVANAGH, P.J., and HOLBROOK, JR., and JANSEN, JJ.

JANSEN, J. Following a jury trial, defendant was found guilty but mentally ill of first-degree murder, MCL 750.316; MSA 28.548, MCL 768.36; MSA 28.1059, and was sentenced to life imprisonment without the possibility of parole. Defendant appeals as of right. We reverse and remand for a new trial.

This case concerns the shooting death of John Kemink, M.D., on June 25, 1992. Dr. Kemink, an otolaryngologist (ear, nose, and throat doctor), was shot and killed in an examination room at the University of Michigan Otolaryngology Clinic. It was undisputed that defendant shot and killed Dr. Kemink. The sole issue at trial was defendant's sanity at the time of the shooting. Defendant believed that Dr. Kemink was conspiring with another doctor (Dr. Proctor) to perform a brain operation that would kill defendant. Defendant also believed that Dr. Proctor had previously damaged his "balance nerve," and that Dr. Kemink had betrayed him by referring him to Dr. Proctor. Defendant wanted to "bring this conspiracy to light" so that no other patients would be harmed. All the expert witnesses who testified at trial agreed that defendant's beliefs were delusional and not based in reality.

The only disputed issue for the jury to determine was defendant's sanity at the time of the offense. Defendant asserted that he was not criminally responsible for Dr. Kemink's death because he was legally insane at the time of the shooting. Four expert witnesses testified at trial; three testified on defendant's behalf and one testified on the prosecution's behalf. Gail Farley, Ph.D., testified on defendant's behalf. Her diagnosis was that defendant suffered from "paranoid persecutorial delusional disorder," and she testified that defendant did not have the capacity to recognize the wrongfulness of his conduct and was unable to conform his conduct to the law. Jack Haynes, Ph.D., testified on defendant's behalf. He testified that defendant suffered from persecutory delusional disorder and that defendant did not have the capacity to fully and realistically appreciate the wrongfulness of his conduct. Dr. Haynes concluded that defendant was unable to conform his conduct to the requirements of the law and that defendant was legally insane when he killed Dr. Kemink. Stephen Cook, M.D., also testified on defendant's behalf. Dr. Cook concluded that defendant suffered from paranoid delusional disorder, that defendant did not have the substantial capacity to know that killing Dr. Kemink was wrong, and that defendant lacked the capacity to conform his conduct to the law.

William Decker, M.D., testified on behalf of the prosecution. He agreed that defendant was mentally ill at the time of the shooting, but stated that defendant had the capacity to appreciate the wrongfulness of what he was doing and that defendant had the capacity to conform his conduct to the requirements of the law. Dr. Decker believed that defendant was

legally sane at the time of the shooting and that the
shooting had nothing to do with defendant's delu-
sional disorder. Rather, Dr. Decker stated that he
believed that defendant killed Dr. Kemink out of
anger in response to defendant's feeling of betrayal of
the trust he had in Dr. Kemink.

The jury found defendant guilty but mentally ill of
first-degree murder. The significant issue on appeal is
the second issue raised by defendant. This issue was
raised in the trial court initially as a pretrial motion.
Defense counsel requested discontinuance of defend-
ant's antipsychotic medication, perphenazine. William
Yaroch, M.D., and Sherry Hansen, M.S.W., testified at
the pretrial hearing. Dr. Yaroch testified that he had
prescribed perphenazine to defendant. He explained
that this medication tends to normalize a person's
thinking and is given to people who have disordered
thinking. He also explained that defendant has delu-
sional thinking and the medication tends to reduce
that part of defendant's thinking. Although the medi-
cation does not eliminate the delusions, it allowed
defendant to become generally more organized in his
thinking.

Dr. Yaroch testified that if defendant was taken off
his medication, it would be a matter of days before he
would become delusional and disorganized. Dr. Yar-
och stated that defendant would not be competent to
stand trial and would not be able to assist in his
defense properly if he was taken off his medication.
Dr. Yaroch could not say for certain what sort of man-
ifestations would occur if defendant was removed
from his medication, but stated that his illness would
worsen and his ability to function would lessen.
Defendant's thinking would become more delusional

and less rational and he probably would not be able to remain competent throughout trial if he was taken off his medication. Dr. Yaroch agreed that perphenazine has a mild sedative effect, but that it was not necessary for defendant to consume large quantities of water while taking it.

Sherry Hansen, defendant's chief clinician at the Center for Forensic Psychiatry where defendant was being held, stated that she had been defendant's chief clinician for only one week. Before becoming defendant's chief clinician, Hansen did have contact with defendant "for quite a long period of time." The length of time was not stated. Hansen had not observed defendant to be sleepy, and she stated that defendant appeared to be alert and active during the day and evening hours. Hansen did state that defendant complained to her that he was being "tranquilized," that he felt sleepy until 2:00 in the afternoon, and that he needed to have a clear mind to defend himself in court.

The trial court denied defendant's pretrial motion to be removed from his antipsychotic medication and made the following findings:

[T]he Court finds that there is an overriding State interest in maintaining the competency of the Defendant in this case that outweighs any right that he might have to be absent medication during the pendency of this trial.

The Court would note that, previously, this trial was scheduled in September of 1993, at which time the issue of the Defendant's competency arose after the beginning of trial and the trial ultimately was adjourned.

The Court believes that given the testimony of Doctor Yaroch—or Mr. Yaroch, especially the testimony that, in his view, the Defendant would not be able to maintain his competency to stand trial throughout this trial, if he were to be

removed from his medication, that the likely result of grant-
ing the defense motion would be to, again, start the trial
and result in an adjournment of the trial mid-trial.

   The People certainly have a right, as does the Defendant,
to a speedy trial on this mater and to grant the motion
would be to restrict that right. Therefore, the motion is
denied.

On appeal, defendant does not contend that he
should have been free from medication throughout
trial. Rather, defendant argues that the trial court
erred in denying defense counsel's second request at
trial to have defendant taken off his antipsychotic
medication for three days to allow defendant to tes-
tify while unmedicated so that the jury could observe
defendant on the witness stand in his true mental
state. Defense counsel requested that defendant be
removed from his medication beginning on a Friday,
and that he remain off the medication for the week-
end until the following Monday. On Monday, defend-
ant would testify, and then be placed back on his
medication. Defense counsel made this request so
that the jury could observe defendant on the witness
stand in an unmedicated state. In other words,
defense counsel wanted the jury to observe defendant
as he was during the time of the shooting, in an
unmedicated state.

In denying defense counsel's second, more narrow
request to have defendant's medication discontinued
for three days, the trial court stated the following:

   The motion is denied. The testimony given by the wit-
nesses at the beginning of this trial clearly indicates that
incompetency would occur were the Defendant removed
from his medication.

> In fact, if I recall the doctor's testimony, within two days, he would certainly be incompetent. He indicated that there is no telling how long it would be—or how soon it could be.
>
> It could—would be on a case-by-case basis and perhaps even within an hour or so, if I recall correctly the doctor's testimony.
>
> The Court has already balanced the interest of both the Defendant and the People and finds still that the interest in having this case move forward is far outweighing any interest to the Defendant having his medication removed at this time, particularly where there has been no showing by anyone that the presentation of the Defendant off of his medication would approximate what he was like at the time of the shooting.
>
> There hasn't been any evidence to that. We don't know at this point in time, based on the testimony that's been given.
>
> I'm satisfied that the—to the extent that the doctor's testimony as to the certainty of incompetency and the absence of any testimony of any testimony as to how long it would take to render him competent again outweighs [the] interests of the Defendant as argued thus far. So I will deny the motion.

We hold that the trial court erred in refusing to grant defense counsel's limited request that defendant be taken off his antipsychotic medication for three days so that he could testify in an unmedicated state. This question really implicates defendant's right to present a defense. A criminal defendant has a state and federal constitutional right to present a defense. Const 1963, art 1, § 13; US Const, Ams VI, XIV; *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984).

This issue is also controlled by the United States Supreme Court's decision in *Riggins v Nevada*, 504 US 127; 112 S Ct 1810; 118 L Ed 2d 479 (1992). In *Riggins*, pp 134, 137, the Supreme Court recognized that a defendant has a liberty interest in freedom

from the involuntary administration of an anti-psychotic drug and that that interest is protected by the Due Process Clause of the Fourteenth Amendment. The Supreme Court held that in the trial or pretrial setting, the state can satisfy due process if the prosecution demonstrates, and the trial court finds, that treatment with antipsychotic medication is medically appropriate and, considering less intrusive alternatives, is essential for the sake of the defendant's own safety or the safety of others. *Id.*, p 135. The state might also be able to justify medically appropriate, involuntary treatment with an antipsychotic medication by establishing that it could not obtain an adjudication of the defendant's guilt or innocence by using less intrusive means. *Id.*

Assuming in this case that the use of perphenazine was medically appropriate, and there is no testimony or argument that its use was not medically appropriate, it is then necessary to determine whether the administration of this drug was necessary to accomplish an essential state policy. *Id.*, p 138. The trial court seemed to be concerned that this case had already been delayed because of defendant's incompetency and ruled first that the right to a speedy trial outweighed defendant's right to be free from the medication during trial. We do not agree.

This issue implicates the defendant's liberty interest to be free from antipsychotic medication, as protected by the Due Process Clause of the Fourteenth Amendment. The trial court's ruling does not seem to recognize that defendant's interest here is of such constitutional dimension. Moreover, the state's "right to a speedy trial" is purely statutory and is not constitutionally based. Only MCL 768.1; MSA 28.1024 pro-

tects the state's right to a speedy trial, while the Sixth Amendment of the federal constitution and Const 1963, art 1, § 20   protect the *accused's* right to a speedy trial. Therefore, the state's statutory right to a speedy trial cannot outweigh the defendant's constitutionally based liberty interest to be free from antipsychotic drugs.

We also note that there was no evidence, and the trial court made no findings, with regard to whether the administration of perphenazine was essential for the sake of defendant's own safety or the safety of others. Therefore, it cannot be stated that the involuntary administration of perphenazine to defendant advanced the essential state policy of protecting the safety of defendant and those around him. There is absolutely no evidence in the record that defendant would pose a risk to himself or others if taken off the medication and the trial court did not use this as a reason in denying defendant's request to be removed from the medication.

Moreover, it is critical to understand that counsel's second request was limited because the trial court had already ruled that the involuntary administration of the antipsychotic medication to defendant advanced the essential state policy of maintaining defendant's competency during trial. However, counsel's second request accommodated this issue of competency. No one disputes that defendant was competent to participate in his defense while he was on the medication. Indeed, counsel stated that defendant had cooperated with him and aided him in defendant's defense. Thus, taking defendant off the medication for only three days so that he could testify in an unmedicated state did not implicate the question of

competency during trial. Defendant had already assisted in his defense and there would not have been any further adjournments needed, contrary to the trial court's ruling, because defendant would then be administered the medication immediately after testifying. Further, there was no evidence that defendant would have presented a safety risk to himself or anyone else had he been taken off the medication for three days. Rather, it was counsel's attempt to present defendant on the witness stand in his true mental state to aid the jury in making its difficult factual determination regarding defendant's sanity.

Further, we disagree with the trial court's ruling that defendant had not shown that his presentation on the witness stand while in an unmedicated state would have approximated his mental state at the time of the shooting. See *People v Hardesty*, 139 Mich App 124, 145; 362 NW2d 787 (1984) (a defendant's demeanor on the witness stand is probative of the issue of sanity only to the extent that the defendant's mental state at trial approximates his mental state at the time of the offense). This holding in *Hardesty* is highly questionable in light of *Riggins*. Of significance, the Supreme Court stated the following:

> We also are persuaded that allowing [the defendant] to present expert testimony about the effect of Mellaril [an antipsychotic drug] on his demeanor did nothing to cure the possibility that the substance of his own testimony, his interaction with counsel, or his comprehension at trial were compromised by forced administration of Mellaril. Even if . . . the Nevada Supreme Court was right that expert testimony allowed jurors to assess [the defendant's] demeanor fairly, an unacceptable risk of prejudice remained. . . .
>
> . . . Because the record contains no finding that might support a conclusion that administration of antipsychotic

medication was necessary to accomplish an essential state policy, however, we have no basis for saying that the substantial probability of trial prejudice in this case was justified. [*Riggins, supra,* pp 137-138.]

Moreover, the holding in *Hardesty* does not really recognize that mental illness, or insanity, is not solely an issue of demeanor, but also has to do with thought processes. In fact, our Mental Health Code recognizes that mental illness includes an impairment of thought. Specifically, MCL 330.1400a; MSA 14.800(400a) defines mental illness as "a substantial disorder of *thought* or mood which significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." (Emphasis added). This was noted by the experts at trial. For example, Dr. Farley testified that people with delusional disorders have a primary problem with thinking and reasoning. Dr. Farley also testified:

[Defendant is] on anti-psychotic medication and it has affected him.

It's been quite a long while since I've seen Mr. Posby and so some of the alterations in his demeanor are quite striking to me.

He was much more capable of telling his story in a calm, if monotone, and kind of flat sort of way.

When Dr. Cook and myself saw him, he was very energized, quickly moved from a calm state to a very irritated, angry, pounding-on-the-table kind of state.

So he appears much calmer, somewhat more logical in his thinking than he was in the past. So some of the symptoms of his mental illness have come under control of the treatment.

And because of that, it may affect, make it difficult, for him to remember some of his psychotic based ideas and wishes.

> So he may genuinely have, because he's gotten better, for-
> gotten the delusional reasons he was so angry at Dr.
> Kemink and felt it so important to bring this to light.

Additionally, Dr. Cook explained that perphenazine is a "major tranquilizer." The side effects of this medication include making people somewhat sedated, drowsiness, blurry vision, dry mouth, and difficulty in initiating urinating. Dr. Cook also testified that he noticed a difference between defendant's presentation to the jury and when Dr. Cook had interviewed defendant before trial.

On the basis of the record, we cannot find any essential state interest to outweigh the trial prejudice that occurred in not allowing defendant to testify while unmedicated. The state's "right to a speedy trial" does not constitute an essential state interest justifying the prejudice in this case. Indeed, there was no threat of adjournment because defense counsel requested that defendant be off his medication for a limited time and only to allow defendant to testify while unmedicated. The risk of prejudice, however, was significant because there is testimony that defendant's demeanor and thought processes could have been, and were, altered by taking perphenazine. This risk of prejudice was noted by Justice Kennedy in his concurring opinion in *Riggins, supra*, p 142:

> At all stages of the proceedings, the defendant's behavior,
> manner, facial expressions, and emotional responses, or
> their absence, combine to make an overall impression on
> the trier of fact, an impression that can have a powerful
> influence on the outcome of the trial. If the defendant takes
> the stand, as Riggins did, his demeanor can have a great
> bearing on his credibility and persuasiveness, and on the
> degree to which he evokes sympathy. . . .

> The side effects of antipsychotic drugs may alter demeanor in a way that will prejudice all facets of the defense. Serious due process concerns are implicated when the State manipulates the evidence in this way.

The trial court should have granted defense counsel's request to have defendant taken off perphenazine for three days before testifying, and allowed defendant to testify in an unmedicated state so that the jury could observe defendant in the manner he was at the time of the shooting (that is, not on any antipsychotic medication). Accordingly, we reverse defendant's conviction and remand for a new trial.

We have reviewed defendant's remaining claims of error and do not find any of those issues to require reversal. Moreover, because those issues are unique to the first trial, we need not further address those issues in this appeal.

Reversed and remanded for a new trial.

CAVANAGH, P.J., concurred.

HOLBROOK, JR., J., (*dissenting*). I respectfully dissent. In *Riggins v Nevada*, 504 US 127, 135; 112 S Ct 1810; 118 L Ed 2d 479 (1992), the United States Supreme Court held that a state satisfies the due process rights of a criminal defendant if it demonstrates that treatment of the defendant with antipsychotic medication is medically appropriate and, considering less intrusive alternatives, essential for the sake of the defendant's own safety or the safety of others. The state may also establish that involuntary treatment with antipsychotic medication was medically appropriate where it can be shown that it could not obtain an adjudication of the defendant's guilt or

innocence by using less intrusive means. *Id.* Several years before *Riggins*, this Court held, in *People v Hardesty*, 139 Mich App 124, 137; 362 NW2d 787 (1984), that "an incompetent accused may be made competent through medicinal agents, and may be tried even though medication must be continued throughout trial to prevent the accused from again becoming incompetent." However, the state's interest in safety and trial continuity must be balanced against the defendant's interest in presenting probative evidence of insanity through his manner and demeanor on the witness stand. *Id.* at 145.

In this appeal, defendant argues that the trial court erred in denying his motion to temporarily discontinue perphenazine for the three-day period preceding his taking the stand. At trial, defense counsel expressed concern that the sedative effect of the medication would impair defendant's ability to show the jury what his demeanor was like on the day of the shooting. Defense counsel noted that defendant seemed "very sedated" and was "dozing" during the trial. However, he acknowledged that defendant had "been very able to assist his attorney in his defense during this week." The trial court denied the motion, finding that defendant would most likely become incompetent within a couple of days if the medication were discontinued. The court further noted that there had been no showing that defendant's nonmedicated state would approximate his demeanor at the time of the shooting.

Although the standard of review for this issue has not been set out with clarity, in *Riggins* the Supreme Court explained that, while review was not to be at the level of strict scrutiny, *Riggins, supra* at 136, a

reviewing court must determine whether the record supports a conclusion that the involuntary administration of antipsychotic medication was "necessary to accomplish an essential state policy," such as bringing a competent defendant to trial in a timely manner or maintaining the safety of the defendant or others, *id.* at 138. See also *Woodland v Angus*, 820 F Supp 1497, 1509 (D Utah, 1993).

Here, the involuntary administration of antipsychotic medication to defendant advanced the essential state policies of maintaining defendant's competency during trial and protecting the safety of defendant and those around him. *Riggins, supra; Hardesty, supra; Washington v Harper*, 494 US 210, 226; 110 S Ct 1028; 108 L Ed 2d 178 (1990) (administration of involuntary medication was meant to ensure that the incarcerated person ceased to be a physical danger to himself or others). According to William Yaroch, M.D., discontinuance of defendant's medication would result in defendant becoming incompetent within a few days. A return to incompetency would impede defendant's ability to assist in his defense, force a likely adjournment of trial, and risk the safety and well-being of defendant and others. Indeed, Dr. Yaroch noted that when defendant was previously removed from his medication his delusional thinking spread from "the central delusion about doctors and people who injured his ears" to "the legal people that were involved, to the people in the jail, a lot of other people." Thus, the safety of defendant and those persons in closest proximity to him would be jeopardized if he were removed from his medication, even for a relatively short time. Moreover, the record does not indicate that defendant's

interest in presenting probative evidence of insanity through his manner and demeanor on the witness stand would have been served by removing him from his medication. Defendant failed to present evidence at the pretrial hearing to show that his demeanor while unmedicated would have approximated his demeanor at the time of the shooting. In fact, it appears from the evidence presented at trial that defendant was relatively calm and acted like an ordinary person just before and right after the shooting. Apparently, defendant was also calm while on his medication. Further, because the jury was apprised during defendant's direct examination that he was currently taking medication and the effects of that medication on him, the jury's evaluation of his insanity defense did not rest on an " 'undisclosed behavioral alteration,' but was the result of an informed consideration of appellant's altered behavior." *Lawrence v State*, 265 Ga 310, 316; 454 SE2d 446 (1995) (citation omitted). Thus, under the facts of this case, I would conclude that the state's essential interest in continuing the trial and maintaining the safety of defendant and others outweighed defendant's interest in presenting evidence of insanity through his demeanor on the witness stand.

Accordingly, I would affirm defendant's conviction.