# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHARLES EDWARD BRITTON,

Defendant-Appellant.

UNPUBLISHED
May 15, 2018

No. 336120
Wayne Circuit Court
LC No. 16-005484-01-FC

Before: O'CONNELL, P.J., and HOEKSTRA and K. F. KELLY, JJ.

PER CURIAM.

A jury convicted defendant, Charles Edward Britton, of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Britton to life imprisonment for the murder conviction and a consecutive two-year term of imprisonment for the felony-firearm conviction. Britton appeals as of right. We affirm.

## I. BACKGROUND

Britton shot and killed his stepfather, Kenneth Taylor, during the early morning of May 23, 2016. Taylor had given Britton a handgun and requested its return. Britton claimed he no longer had the gun. On the evening of May 22, at approximately 6:00 p.m., Britton's mother cautioned Britton not to return home without it. Subsequently, at approximately 2:30 a.m., people inside the house heard several gunshots originating from the kitchen. No one witnessed the shooting. Immediately after Britton's mother heard gunshots, Britton appeared at her bedroom door and said that he had shot Taylor after Taylor pulled a gun on him. When the police arrived, two guns were on the kitchen counter. Britton asserted a theory of self-defense at trial. Britton did not testify, but the defense highlighted Britton's statement to his mother immediately after the shooting and the recovery of two guns from the scene. The prosecutor disputed Britton's theory of self-defense and argued that Britton's shooting of Taylor was premeditated and deliberate.

## II. SUFFICIENCY OF THE EVIDENCE

Britton first challenges the sufficiency of the evidence in support of his convictions of first-degree premeditated murder and felony-firearm. Britton does not challenge the sufficiency of the evidence in support of the elements of first-degree premeditated murder or felony-firearm.

-1-

Rather, Britton argues only that the prosecution failed to disprove beyond a reasonable doubt that he acted in self-defense. We disagree.

We review a challenge to the sufficiency of the evidence de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). When ascertaining whether sufficient evidence was presented at trial to support a conviction, this Court must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (citation and quotation marks omitted). A "reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

"Once a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *People v Dupree*, 486 Mich 693, 712; 788 NW2d 399 (2010). The Self-Defense Act, MCL 780.971 *et seq*., codified the circumstances in which a person may use lawful self-defense. MCL 780.972 provides, in relevant part:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

A "defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor." *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013).

Britton presented the theory of self-defense through evidence that two guns were recovered from the scene and that he told his mother immediately after the shooting that he shot Taylor after Taylor pulled a gun on him. Although this evidence supported a self-defense claim, the prosecution presented other evidence to refute it. It was up to the jury to determine the credibility of Britton's alleged statement to his mother. Britton's friend testified that Britton told him shortly before the shooting that he had been kicked out of the house because of his "ho ass stepdaddy." This evidence supported an inference that Britton was already upset with Taylor when Britton returned home. Further, even if the jury believed that Taylor possessed a gun when Britton entered the house, it was not compelled to find that Taylor threatened Britton with the gun. According to Britton's mother, Taylor had asked Britton to return the gun, but Britton's mother was the one who was upset about it, not Taylor. The jury could have found that Britton would not have had an honest and reasonable belief that Taylor, his stepfather, was an actual threat to Britton's life or safety.

The jury could have also concluded that Britton responded with force beyond what was necessary to protect himself from death or severe bodily harm. Taylor was shot 10 times, including once to his back. At least one wound to his forearm appeared to be a defensive wound. The semi-automatic firearm required Britton to separately pull the trigger for each of the 10 shots, and one witness heard a pause between the first eight shots and the last two. Seven of the 10 shots were fired from a position where Taylor was lower than the gun when it was fired. Four of the 10 shots were critical and disabling. From this evidence, a jury could have reasonably inferred that Taylor had not assumed an aggressive stance, and instead was in a defensive posture when he was shot, and that Britton continued to shoot Taylor several times knowing that he no longer posed a threat. The pause before the final two shots were fired further supports an inference that this shooting was not defensive. Viewing the evidence in a light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that Britton did not act in justifiable self-defense.

### III. RIGHT TO PRESENT A DEFENSE

Britton argues that the trial court violated his constitutional right to present a defense when it precluded defense counsel from questioning medical examiner Dr. Chantel Njiwaji, an expert in the field of anatomical and forensic pathology, about whether Taylor "may have been spinning when shot" to refute the prosecutor's theory that Taylor "was not upright when being shot." Although defense counsel sought to question the witness about this theory and the trial court sustained the prosecutor's objection to the scope of the cross-examination, Britton never argued that this testimony was necessary to preserve his constitutional right to present a defense. Therefore, Britton's constitutional claim is unpreserved, and our review is limited to plain error affecting his substantial rights. See *Carines*, 460 Mich at 763-764.

A defendant has a constitutional right to present a defense. US Const, Am VI; Const 1963, art 1 § 20; *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). He must still comply with procedural and evidentiary rules established to assure fairness and reliability in the verdict. *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1985). MRE 402 prohibits the admission of evidence that is not relevant. Thus, the "right to present a defense extends only to *relevant* evidence." *People v Danto*, 294 Mich App 596, 604; 822 NW2d 600 (2011). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Expert testimony must be limited to opinions falling within the scope of the witness's knowledge, skill, experience, training, or education. See MRE 702.

It is within a forensic pathologist's area of expertise to offer testimony concerning the cause and manner of death. To this end, Dr. Njiwaji testified about perforating and penetrating wounds, entrance and exit locations, paths of the bullets, and the critical nature of certain wounds. Dr. Njiwaji clearly testified that she could not tell the position of Taylor's body when the wounds were inflicted but could only explain the angle and paths associated with each wound. Under the circumstances, the doctor's opinion about defense counsel's hypothetical of whether Taylor "may have been spinning when shot" would have been both speculative and outside the area of her expertise. Britton confuses the admissibility of evidence with what he is allowed to argue during closing argument on the basis of evidence and reasonable inferences arising therefrom. The trial court allowed defense counsel to comment on Dr. Njiwaji's

testimony during closing argument and to use that testimony to support his spinning theory during closing argument. Consequently, the trial court did not violate Britton's constitutional right to present a defense.

## IV. JUDICIAL MISCONDUCT

Britton argues that a new trial is required because the trial court's conduct during trial pierced the veil of judicial impartiality and denied him a fair trial. We disagree. "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). Britton did not object to the trial court's conduct at trial, leaving this issue unpreserved. See *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). We review unpreserved issues for plain error affecting substantial rights. *Carines*, 460 Mich at 762-763.

A defendant "must overcome a heavy presumption of judicial impartiality" when claiming judicial bias. *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (citation and quotation marks omitted). In determining whether a trial judge's conduct deprives defendant of a fair trial, this Court considers whether the "trial judge's conduct pierces the veil of judicial impartiality." *Stevens*, 498 Mich at 164, 170. "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Id*. at 171. This inquiry is fact-specific, and this Court considers the "cumulative effect" of any errors. *Id*. at 171-172. A single instance of misconduct does not create an appearance that the trial judge is biased unless it is "so egregious that it pierces the veil of impartiality." *Id*. at 171. In evaluating the totality of the circumstances, this Court should consider a "variety of factors," such as the trial judge's conduct, tone, and demeanor, "the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions." *Id*. at 172.

### A. ADMONISHING DEFENSE COUNSEL ABOUT OPENING STATEMENT

Britton first takes issue with the trial court's conduct in admonishing defense counsel in the jury's presence about his opening statement, which Britton claims contained "hardly anything objectionable." Immediately before the trial court intervened, defense counsel stated:

> I challenge any one of you at the end of this controversy, this criminal lawsuit to dispute that evidence. This will come in. The prosecution will not be able to tell you that my assertion is a lie or a[n] embellishment.
>
> Now, once you produce that gun which is an inherently dangerous weapon and put it into a young man's face, a military-trained Jamaican, as she called him and I don't say that despairingly, this guy that's trained with weapons put this gun to your face, a 20-year-old startled, stunned, reacts. And for whatever happens after that, the dad put it in play. And if he shot 14 times on a gun that had a trigger that shoots 14 bullets within 10 seconds, there's no chance to premeditate, there's no chance to have to scheme, there's no chance to lie in waiting, there no

-4-

chance to be in the state of mind to commit murder one so this whole charge of murder in the first degree is an embellishment and an insult to our constitution.

When the trial court intervened, the following exchange occurred:

> *The court*: Remember what I told you before, I said no argument in opening statement.
>
> Defense counsel: All right.
>
> *The court*: But you just argued the whole doggone case. Are you going to follow what I tell you to do or are you just going to go on your own merry way?
>
> *Defense counsel*: Judge, I'm going to go your way.
>
> *The court*: And you'd better.
>
> *Defense counsel*: Okay.
>
> *The court*: Otherwise I'm going to hold you in contempt of court.

Defense counsel continued his opening statement and concluding by stating, "You'll hear facts, and then at closing argument I'll try to make some sense out of this nonsense."

One form of judicial misconduct is biased commentary in front of the jury. *Stevens*, 498 Mich at 173. Reversal is proper " 'when the trial judge's questions or comments were such as to place his great influence on one side or the other in relation to issues which our law leaves to jury verdict.' " *Id*. at 177 (citation omitted). In general, however, a trial judge's comment that is critical of or hostile to a party or his counsel is not sufficient to pierce the veil of judicial impartiality. *Jackson*, 292 Mich App at 598. A trial judge's rulings or opinions do not pierce the veil of judicial impartiality "unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible." *Id*. (citation and quotation marks omitted).

Considering the totality of the circumstances, the trial court's interjection and comments were not calculated to cause the jury to believe that it had any opinion regarding the case and were not likely to unduly influence the jury to the detriment of Britton. Although the trial court's comments could be considered argumentative, they do not reveal deep-seated favoritism or antagonism such that the trial court could not conduct the proceedings impartially. Rather, it is well established that the trial court has a duty to control trial proceedings in the courtroom and has wide discretion and power to fulfil that duty. *People v Conley*, 270 Mich App 301, 307; 715 NW2d 377 (2006). As the trial court observed, defense counsel's discourse during opening statement went beyond the proper bounds of an opening statement, which is to "state the facts to be proven at trial[,]" *People v Johnson*, 187 Mich App 621, 626; 468 NW2d 307 (1991). The trial court appropriately exercised its discretion to control the trial to prevent improper argument during opening statement.

Regarding its admonition, the trial court had already cautioned defense counsel to refrain from presenting argument during opening statement. While Britton focuses on the judge's

admonishing of defense counsel in the presence of the jury, he fails to also observe that defense counsel's behavior of arguing his case during opening statement, despite the court's instruction not to do so, very likely caused the court's comments. Moreover, the trial court's remarks must be considered in light of the totality of the circumstances, and the record discloses several instances in which the trial court ruled against the prosecution with a similar vigor and tone. Finally, the trial court explained to the jury that it had a responsibility to ensure that the trial was run efficiently and fairly. The trial court instructed the jury that the case must be decided on the evidence only, that its comments and rulings are not evidence, that it is not trying to influence the vote or express a personal opinion about the case when it makes a comment or a ruling, and that if the jury believes that the court has an opinion, that opinion must be disregarded. "Because jurors are presumed to follow their instructions, the presence of a curative instruction does tend to cut against a finding of judicial bias." *Stevens*, 498 Mich at 190 (citation and quotation marks omitted). Britton has not demonstrated that the trial court's comments were plain error.

We also reject Britton's related claim based on the trial court's scolding of defense counsel after his opening statement concluded. The comments to which Britton refers were made after the trial court excused the jury. Thus, there is no basis for concluding that the trial court's comments improperly influenced the jury.

## B. QUESTIONING WITNESSES

Britton takes exception to the trial court's questioning of the first responding police officer about the location of the two recovered guns and questioning of a forensic scientist, who documented the scene and collected evidence, about the location of evidence. The general nature of this judicial intervention—questioning of a witness by the trial court—is not inappropriate. MRE 614(b) permits the trial court to question witnesses. Such questioning can "produce fuller and more exact testimony or elicit additional relevant information." *Stevens*, 498 Mich at 173.

Although the trial court asked these witnesses additional questions about the evidence found at the scene, we are not convinced that the trial court's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against Britton. The questions were material to issues in the case, they were limited in scope, and they were posed in a neutral manner. The questions were asked because some of the testimony was lacking detail. The responses did not appear to favor the prosecution but provided a fuller explanation to the jury about the evidence collected. Even if the testimony elicited could be deemed damaging to Britton's case, that fact does not demonstrate that the trial court's questioning was improper. See *People v Davis*, 216 Mich App 47, 51-52; 549 NW2d 1 (1996). And the trial court instructed the jury that the case must be decided on only the evidence, that its questions are not evidence, that it is not trying to influence the vote or express a personal opinion about the case when it makes a comment or a ruling, and that if the jury believes that the court has an opinion, that opinion must be disregarded. The trial court's instructions were sufficient to protect Britton's substantial rights. Britton has not demonstrated that the trial court's questioning was plain error.

## C. INFLUENCING THE PROSECUTOR'S QUESTIONING OF TAYLOR'S SISTER

Britton also directs our attention to the following instance when the trial court made a ruling and instructed the prosecutor on how to properly question a witness, Taylor's sister, which he alleges demonstrated bias by influencing the prosecutor's questioning of the witness.

> *The court*: The question that was asked of this witness was the explanation or story given by the wife, [Britton's mother], changed?
>
> *The prosecutor*: Yes.
>
> *The court*: Okay? That's an opinion.
>
> * * *
>
> *The court*: That—the opinion is up to the jury.
>
> *The prosecutor*: I gotcha.
>
> *The court*: So now what we need to hear is, what is it that supposedly changed, okay? So that the jury can formulate its own opinion, not this witness's, because this witness cannot supplant or replace the obligation or duty imposed on the jury. Do we understand each other?
>
> *The prosecutor*: I understand.

The trial court's remarks were not of a nature to unduly influence the jury. The record shows that the trial court appropriately exercised its discretion to control the trial to prevent improper questioning and wasting of additional time on this matter. The trial court's intervention was intended to prevent the admission of testimony, in the form of an opinion, that would tend to invade the province of the jury by injecting a witness's unspecified opinion that Britton's mother's story had changed without any explanation of what had changed. The trial court's intervention served to ensure that the jury would have a proper foundation to decide for itself whether anything had changed. Britton does not explain how the trial court's ruling or instructions on how to proceed on this evidentiary matter demonstrate bias. More significantly, judicial rulings on their own, even those unfavorable to a litigant, are not sufficient to demonstrate bias. *Jackson*, 292 Mich App at 598. Thus, Britton has not shown plain error.

## V. MISTRIAL

Lastly, Britton argues that the prosecutor's questioning of Britton's mother regarding an alleged "illicit affair" with another man constituted misconduct so that the trial court erred when it denied Britton's request for a mistrial on the basis of her testimony. We disagree. We review a trial court's ruling on a motion for a mistrial for an abuse of discretion. *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *Id*. A mistrial should be granted "only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *Id*. (citation and quotation marks omitted).

"A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992). Britton makes a general argument that the prosecutor engaged in misconduct by eliciting the challenged testimony, which he argues was irrelevant, MRE 401, and unduly prejudicial, MRE 403. We agree with the trial court, however, that the challenged testimony was not irrelevant or grounds for a mistrial. When a defendant's prosecutorial misconduct argument is "essentially an evidentiary issue framed as prosecutorial misconduct[,]" this Court determines whether the prosecutor acted in good faith. *People v Dobek*, 274 Mich App 58, 70-71; 732 NW2d 546 (2007). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Id.* at 70.

"A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice under MRE 403. MRE 403 is not intended to exclude "damaging" evidence because any relevant evidence will be damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod on other grounds 450 Mich 1212 (1995). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id.* at 75-76 (citation and quotation marks omitted). In the second situation, the unfair prejudice language "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App 611 (citation and quotation marks omitted).

We agree with the trial court that the credibility of Britton's mother—the wife of the decedent and a witness testifying about Britton's self-defense claim—was relevant. Although Britton asserts that there was no evidence of an actual affair, he ignores the context in which the testimony was elicited, which was to provide the jury with a complete understanding of the nature of the witness's relationship with the decedent at the time of his death. Britton's mother identified Roger Williams as her lawn care person and a friend. The prosecution elicited testimony that Britton's mother and Williams exchanged 80 phone calls within three days of the shooting. After Taylor's death, Britton's mother contacted Williams, who came to the police station, and Britton's mother began regularly driving one of Williams's cars. Britton's mother was a material witness because of her relationship to both Taylor and Britton and because she offered testimony that was significant to Britton's claim of self-defense. The challenged testimony was relevant to Britton's mother's credibility because it provided the jury with a complete understanding of the family dynamics and Britton's mother's relationship with Taylor at the time of his death. This testimony was probative of whether Britton's mother would have any reason to lie to protect Britton in an offense involving the shooting death of her husband. Further, we are not persuaded that the jury would not have been able to rationally weigh the evidence. Accordingly, because the evidence was relevant, no basis exists to conclude that the prosecutor offered it in bad faith. Therefore, Britton cannot establish that the trial court abused its discretion by denying his motion for a mistrial on this basis.

Britton also argues that the cumulative effect of several errors denied him a fair trial. "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal

even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict" to warrant a new trial. *Dobek*, 274 Mich App at 106. Britton refers to his claim that he was denied his right to present a defense and his claims of judicial misconduct, which we have already addressed and rejected. Because Britton has not identified any single error, let alone several errors, that undermined the reliability of the verdict, he is not entitled to a new trial on this basis.

We affirm.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Kirsten Frank Kelly