*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DANIEL BARRY QUINN,

      Defendant-Appellant.

UNPUBLISHED
April 16, 2020

No. 346217
Livingston Circuit Court
LC No. 16-023976-FH

Before: CAVANAGH, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of domestic violence, MCL 750.81(2), but acquitted him of assault with intent to commit sexual penetration and interfering with an electronic communications device. On appeal, defendant contends that the trial court interfered with his ability to present a defense and confront the witnesses against him, and argues that the prosecution engaged in misconduct. We discern no prejudicial error and affirm.

## I. BACKGROUND

Defendant's conviction arises from an incident occurring around October 25, 2016. At that point, defendant and the victim had been in some sort of relationship for approximately two years. The victim moved in with defendant when she found herself homeless. Defendant asserted that he considered the victim his girlfriend but felt used and manipulated by her; the victim described that she sometimes engaged in sexual relations with defendant because she felt obligated. Both agreed, however, that defendant provided the victim with drugs and gifts.

The parties disagreed about what happened on the day in question. The victim testified that defendant tried pressuring her to have sex by giving her shopping money and drugs. However, the victim rejected defendant and went to bed. The victim testified that she awoke to find defendant lying next to her with his hand up her shirt. They both jumped up and the victim kicked defendant in the groin. Defendant became angry, threw the victim on the bed, and ripped off her clothes, threatening to rape her. The victim asserted that defendant stopped when he could not get an erection. She testified that defendant then smashed her phone. The victim went upstairs and used a landline to call a friend to pick her up.

Defendant, on the other hand, testified that the victim had promised him sex and he was angry when she refused, but he did not assault her. He testified that the victim fell asleep on the couch and when he tried to wake her, the victim kicked him, and he held her until she calmed down. Defendant claimed that on a separate day, the victim broke her own phone, punched him in the face, and destroyed things until defendant grabbed her by the arm and took her to the front door to kick her out.

The officer in charge of the investigation also testified at the trial. Trooper Ryan Boden interviewed both the victim and defendant during the investigation. The trooper testified that when he contacted defendant by telephone, he was initially "very hesitant to cooperate." When Trooper Boden informed defendant that the matter "was dealing with" the victim, defendant stated without prompting that he had not raped her. Defense counsel was able to establish during Trooper Boden's testimony that defendant believed that the victim had made other accusations of assault against previous boyfriends, explaining the unprompted answer.

Defendant's trial strategy was to accuse the victim of battering him throughout their relationship. He wanted to present evidence that this was a pattern in the victim's life. Accordingly, before trial, defense counsel filed a motion to introduce evidence during the victim's cross-examination that she had been arrested for domestic violence against a subsequent boyfriend, that she had a history of making false allegations of assault against boyfriends to break up with them, and that she had a "prior criminal and family court history." Defendant relied upon MRE 404(b) to support his motion. The trial court denied the motion, but later did allow defense counsel to elicit testimony from the victim that she had hit defendant.

At the close of trial, the court instructed the jury on the elements of the charges, as well as on the affirmative defenses of self-defense and defense of property. As noted, the jury acquitted defendant of assault with intent to commit sexual penetration, MCL 750.520g(1), and interference with an electronic communications device, MCL 750.540(5)(a), but convicted defendant of domestic violence, MCL 750.81(2). Defendant now appeals.

## II. RIGHT TO PRESENT A DEFENSE

Defendant contends for the first time on appeal that the court interfered with his constitutional right to present a defense and to confront the witnesses against him by preventing him from presenting evidence that the victim had been habitually violent toward him during their relationship and from presenting the entirety of his statement to Trooper Boden. Defendant argued below only that the victim's habitual violence toward him was admissible under MRE 404(b) to establish the victim's "scheme, plan or motive." Objection on one ground does not preserve a challenge on another. *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). Generally, we would review defendant's constitutional challenge de novo. However, as defendant failed to preserve this issue by raising it below, our review is limited to plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

A criminal defendant has a right to present a defense under our state and federal constitutions. US Const, Ams VI, XIV; Const 1963, art 1, §§ 13, 17, 20; *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984). "[T]he right to present a defense is a fundamental element of due process . . . ." *Id*. at 279. In *Pennsylvania*

*v Ritchie*, 480 US 39, 56; 107 S Ct 989; 94 L Ed 2d 40 (1987), the United States Supreme Court stated, "Our cases establish, at a minimum, that criminal defendants have the right to . . . put before a jury evidence that might influence the determination of guilt." [*People v Antsey*, 476 Mich 436, 460; 719 NW2d 579 (2006).]

As noted, the trial court denied defendant's pretrial motion to present evidence regarding the victim's tendency toward violence pursuant to MRE 404(b). At the hearing on defendant's motion, defense counsel described the "types of evidence" he was seeking to present: "her prior actions in using the justice system to report people for . . . various things, using it as a sword" and "evidence of a subsequent charge for domestic violence" where her actions were "very similar to what we're arguing happened in this case." However, defendant did *not* seek in that motion to present the evidence underlying his appellate challenge—evidence of the victim's alleged habitual violence toward him.

In denying defendant's motion, the court noted that it would only be convinced to admit the evidence if it established "almost like a signature," and that was not present here. The court would permit, however, evidence tending to establish the victim's character for truthfulness. To that end, defendant could cross-examine the victim "as to whether she was truthful with police in this instance, may not inquire into other acts."

On cross-examination of the victim, defense counsel elicited testimony regarding her drug abuse, the substances she had used that day, and her possible state of intoxication. Defense counsel also successfully elicited some testimony that the victim had employed violence against defendant during their relationship. During a sequence of questioning on cross-examination, the victim made the following admissions:

> *Q.* And according to you, you fell asleep crying yourself to sleep because you were so upset that [defendant] had asked you for sex, right?
>
> *A.* Well, we were arguing and he was calling me names, belittling me, berating me, just treating me like a piece of shit.
>
> *Q.* Okay. And that happened all the time between you two, right?
>
> *A.* Oh, yes.
>
> *Q.* And you would do it right back to him too, right?
>
> *A.* Of course.
>
> *Q.* Yeah, absolutely. You would hit him too, right?
>
> *A.* When he, yes, when he, when he pulled me by my arm, yes.

Defense counsel tried to dig deeper, but posed his next question in an objectionable fashion: "When he deserved it, is that what you were going to say?" The prosecutor interjected that the court had precluded evidence that the victim perpetrated domestic violence against defendant.

This was not an accurate portrayal of the court's pretrial evidentiary ruling. Defense counsel retorted, "I think the People opened the door when they started talking about specific prior instances of conduct." Shortly thereafter, however, defense counsel asked the victim if she "remember[ed] when she hit [defendant] in the face" and the victim responded, "Yes, I have done that."

Defense counsel subsequently asked the victim for more details about the current incident. The victim described how she and defendant "both jumped up" when the victim awoke to discover defendant's hand in her shirt. The victim indicated that she "got in front of the door, barricaded the door, I knew I was in trouble; that's when I assaulted him." The victim admitted that defendant "put his arms up like in fear," "[l]ike [she] was going to hit him." But, the victim asserted, defendant grabbed her and threw her on the bed after.

Evidence that the victim was violent toward defendant certainly would have assisted his defense. However, he did not actually make a case for presenting this evidence in his pretrial motion and has never described the particular incidents he would have liked to present to the jury. Moreover, the court did permit defendant to elicit testimony that the victim employed violence during the current incident and generally that she had hit defendant in the past. And the court instructed the jury on self-defense and defense of property. The limitation of his cross-examination did not cross the line into preventing defendant from presenting a defense.

Defendant also contends for the first time on appeal that the court's limitation on cross-examination denied him the right to confront the witnesses against him. Again, absent any description of the particular evidence defendant sought to introduce, we cannot conclude that defendant suffered any prejudice from the limitation of his cross-examination. And defense counsel otherwise thoroughly cross-examined the witness in an attempt to show that defendant acted in self-defense. On this record, we find no ground to grant defendant relief.

Defendant also raises a confrontation challenge to the trial court's limitation of his cross-examination of Trooper Boden about defendant's police interview. This issue also is not preserved for appeal as defendant contended below only that the testimony was admissible under the rule of completeness, MRE 106. Further, defendant's challenge in this regard is very limited on appeal; he contends only that he should have been able to elicit testimony to explain why he immediately believed that the victim had accused him of rape. Specifically, defense counsel wanted to inquire whether defendant told the trooper that the victim had made false allegations against other men in the past.

Although the trial court limited the scope of the question, defense counsel was permitted to ask Trooper Boden, "During this discussion about how [defendant] brought up the, the rape allegation . . . he was also telling you at the time that he believed that [the victim] had made other false allegations about her previous boyfriends," and the trooper responded, "Yes, that's correct." Defendant complains that he could not delve further into this topic; however, Trooper Boden could present no additional information. Trooper Boden could form no opinion on whether the victim had actually accused other men of rape or whether those prior allegations were false. Accordingly, we discern no error in the trial court's ruling.

## III. PROSECUTORIAL MISCONDUCT

Defendant further contends that the prosecutor committed several errors during the course of this trial. Generally, we review claims of prosecutorial misconduct de novo on a case-by-case basis to determine whether the prosecutor's remarks, in context, resulted in the denial of a fair and impartial trial. *People v Abraham*, 256 Mich App 265, 272-273; 662 NW2d 836 (2003). Where a defendant fails to preserve his challenge with a contemporaneous objection, our review is limited to plain error affecting the defendant's substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013).

Defendant's first challenge is to a statement made by the prosecutor during opening statements:

> Decide first what he did or didn't do, compare that to the law Judge gives you and when you see that his own admissions and the corroborated statements of [the victim] come together, you're going to see that each of the things he's accused of, *and more*, he is guilty of. [Emphasis added.]

This was plain error. A prosecutor may not make a statement to the jury that is not supported by evidence, *People v Ericksen*, 288 Mich App 195, 199; 793 NW2d 120 (2010), "[n]or may a prosecutor urge the jury to convict [a defendant] . . . on the basis of its prejudices." *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008).

This Court's opinion in *People v Owens*, 108 Mich App 600; 310 NW2d 819 (1981), is directly on point. In *Owens*, 108 Mich App at 610-611, this Court stated:

> While this Court is not unaware of the difficulty of phrasing every statement with precision in closing argument, this reference to an uncharged crime of which the defendant was "guilty," in combination with the previous references by the prosecutor to other "crimes[,]" . . . might have convinced a jury unversed in legal technicalities that the defendant was guilty of something and should be convicted.

In this case, the prosecutor's comment that defendant was guilty of other uncharged acts could have improperly convinced the jury that he was guilty of another crime and should be convicted.

However, the challenged statement was very brief and isolated. Moreover, the court instructed the jury on the elements of the three charged offenses, and despite this improper comment, the jury acquitted defendant of two. Accordingly, we discern no prejudice as a result of the prosecutor's error.

Defendant next contends that by discussing the "dynamics of domestic violence" in his opening statement, the prosecutor insinuated "long-term criminal conduct by [defendant] and an attack on [defendant's] character." At the onset of his argument, the prosecutor stated:

> So to give you context for the case, I often explain the victim dynamics to victims themselves and I explain to them, when they say, I don't know why he hurt me. Domestic violence is not about violence. It's not about hurting; it's about control. It's about viewing an intimate partner as property that you can assert your dominion

over.  Domestic violence starts with isolation, manipulation, emotional abuse.  It turns into telling people they can't see other friends.  It turns into you can go there, you can't talk to him, let me see your phone.  It only turns into violence when that control slips away.  It's a way of reasserting control.

These statements were not improper.  While a prosecutor may not make a statement that is not supported by evidence, he or she may summarize anticipated testimony.  *Ericksen*, 288 Mich App at 199-200.  Here, the prosecutor simply explained why the evidence in this case would demonstrate domestic violence.  Immediately after making the challenged statements, the prosecutor informed the jury that he would present evidence that defendant gave the victim a telephone but then controlled her use of it, as well as evidence of other unhealthy "dynamics of the relationship."

Finally, defendant contends that the prosecutor erred in eliciting testimony from the victim and her friend, Emerauld Gray, that defendant was a drug dealer.  The witnesses' answers were not responsive to the questions actually asked by the prosecutor.  A nonresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial and does not deny a defendant the right to a fair trial because the answers were not elicited by the prosecutor's questioning.  *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995).  Accordingly, defendant is not entitled to a new trial on this ground.

We affirm.


/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher